743 F.2d 1526
 84-2 USTC P 13,592
 ESTATE OF Aimee Magnus FLANIGAN, Deceased, Peter M.
Flanigan, Personal Representative, Petitioner-Appellant,
v.
COMMISSIONER, INTERNAL REVENUE, Respondent-Appellee.
ESTATE OF Horace C. FLANIGAN, Deceased, Peter M. Flanigan,
Personal Representative, Petitioner-Appellant,
v.
COMMISSIONER, INTERNAL REVENUE, Respondent-Appellee.
 Nos. 83-5566, 83-5567.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 11, 1984.
 
 John S. Nolan, Miller & Chevalier, Washington, D.C., Peter Matwiczyk, Gunther, Yoakley, Criser & Stewart, P.A., Palm Beach, Fla., for petitioner-appellant.
 James J. Keightley, Michael L. Paup, Chief, Appellate Section, Tax Div., Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Robert A. Bernstein, U.S. Dept. of Justice, Tax Div., Kristina E. Harrigan, Asst. Atty. Gen., Washington, D.C., for respondent-appellee.
 Appeals from the Decision of the United States Tax Court.
 Before HILL and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 R. LANIER ANDERSON, III, Circuit Judge:
 
 
 1
 The estates of Aimee Magnus Flanigan and Horace C. Flanigan appeal a decision of the Tax Court disallowing certain charitable deductions and determining estate tax deficiencies of $2,770,238.77 and $3,236,233.14. The issue on appeal is the proper application of certain portions of Sec. 2055 of the Internal Revenue Code, 26 U.S.C.A. Sec. 2055 (West 1979), as they existed between the passage of the Tax Reform Act of 1969 and the passage of the Tax Reform Act of 1976. Section 2055 governs charitable deductions from taxable estates.
 
 FACTS
 
 2
 The parties stipulated the following facts. Horace C. Flanigan and Aimee Magnus Flanigan were husband and wife at the time of Mrs. Flanigan's death on August 19, 1976. On that date, Mr. Flanigan was 86 years old. Mr. Flanigan died on June 15, 1978. Both Mr. and Mrs. Flanigan died testate.
 
 
 3
 Mrs. Flanigan's will was executed on January 14, 1975. The will made specific bequests of certain property, which are not relevant here, and, from a portion of the residue of the estate, established a marital deduction trust for Mr. Flanigan's benefit. The will specifically provided that no estate, inheritance, or death taxes were to be charged against this portion of the estate. The marital deduction trust gave Mr. Flanigan a right to all the net income of the trust for life, with a power of invasion in the trustee to secure Mr. Flanigan's comfort and welfare. Mr. Flanigan received a general power of appointment over the principal, exercisable only in his will.
 
 
 4
 The marital trust was designed to take advantage of the estate tax marital deduction provided by Sec. 2056(a) of the Tax Code. Mrs. Flanigan bequeathed to the marital trust an amount of property that would result in the maximum marital deduction.
 
 
 5
 Within six months of Mrs. Flanigan's death, Mr. Flanigan executed an affidavit specifying his intent to exercise his testamentary power of appointment over the marital deduction trust in favor of organizations recognized as charitable by the IRS for purposes of the estate tax charitable deduction. The affidavit was filed with the IRS as an attachment to the estate tax return of Mrs. Flanigan's estate.
 
 
 6
 On November 15, 1976, the date of the affidavit, Mr. Flanigan also executed his will, exercising his power of appointment in favor of the charitable beneficiaries listed in his affidavit. The will expressly conditioned the exercise of the power of appointment on the allowance of a charitable deduction to his wife's estate with respect to the remainder of the marital deduction trust and the allowance of an estate charitable deduction to his own estate based on his exercise of the power of appointment.
 
 
 7
 No part of the corpus of the marital deduction trust was distributed to any beneficiary during Mr. Flanigan's life.
 
 
 8
 Mrs. Flanigan's estate claimed a marital deduction, $6,580,975.29 of which was attributable to Mr. Flanigan's interest in the marital deduction trust. Her estate also claimed a charitable deduction, $5,267,741.67 of which represented the value of the remainder interest in the marital deduction trust.
 
 
 9
 Mr. Flanigan's estate claimed a charitable deduction of $6,818,218.29, representing the value at the time of his death of the marital trust remainder passing to charitable beneficiaries under his exercise of the power of appointment.
 
 
 10
 The IRS denied both charitable deductions. The IRS denied the charitable deduction of Mrs. Flanigan's estate because the remainder interest of the marital trust did not satisfy the requirements of Sec. 2055(e)(2), which by its terms governs the deductibility of split interest gifts to charity. The charitable deduction claimed by Mr. Flanigan's estate was denied because it was conditioned on the allowance of the charitable deduction to his wife's estate. Mrs. Flanigan's taxable estate was therefore increased $5,267,741.67. Mr. Flanigan's estate was increased $6,818,218.29.
 
 
 11
 The taxpayers filed timely petitions in the United States Tax Court, which sustained the Commissioner's determinations. The taxpayers then filed these appeals.
 
 APPLICABLE STATUTORY SCHEME
 
 12
 Sec. 2055 of the Internal Revenue Code governs charitable deductions from taxable estates.[1]
 
 
 13
 Sec. 2055(a) states that bequests, legacies, devises, and transfers to charity are deductible from the value of a taxable estate.
 
 
 14
 Sec. 2055(b) explains which decedents are to be considered transferors for purposes of the charitable deduction of Sec. 2055 when powers of appointment are used. Sec. 2055(b)(1) states that property which is included in a decedent's gross estate because he has a power of appointment, and which is received by charity, shall be considered a bequest of such decedent. In other words, the holder of the power is deemed a transferor of the property.
 
 
 15
 Sec. 2055(b)(2), which was repealed by Sec. 1902(a)(4) of the Tax Reform Act of 1976,[2] provides that under certain circumstances, the creator of a power of appointment is also deemed a transferor. It provides that "for purposes of this section" a bequest in trust by a decedent to his spouse (the spouse being entitled to income for life and having a general power of appointment by will over the corpus), shall, to the extent the power is exercised in favor of a charity, be deemed a transfer of the trust principal, less the value of the life estate, to the charity by the decedent, if (1) no part of the trust corpus is distributed to a beneficiary during the life of the surviving spouse, (2) the surviving spouse was over 80 years old at the date of decedent's death, (3) the surviving spouse executes an affidavit within 6 months after the decedent's death specifying the charities in whose favor he plans to exercise the power, and (4) the power of appointment is exercised in favor of the charities specified in the affidavit.
 
 
 16
 Secs. 2055(c), (d), and (e) limit the deductions allowed under Sec. 2055. Sec. 2055(c) provides that amounts deductible under Sec. 2055 must be reduced by the amount of taxes payable out of the bequest, legacy or transfer. Sec. 2055(d) disallows a deduction for the value of transferred property not included in the gross estate. Sec. 2055(e) disallows deductions in certain cases. Sec. 2055(e)(2), which was added to the Code by the Tax Reform Act of 1969, limits deductions under Sec. 2055 in the case of split interest gifts. Split interest gifts are those under which part of the decedent's interest passes to a noncharitable beneficiary and the remaining part passes to a charitable beneficiary, e.g., life estate to a child, remainder to charity. Sec. 2055(e)(2)(A) disallows a charitable deduction for a split interest gift of a remainder interest to charity unless the transfer is a charitable remainder annuity trust or a charitable remainder unitrust or a pooled income fund.
 
 DISCUSSION
 
 17
 The issue in this appeal is the relationship between Sec. 2055(b)(2) and Sec. 2055(e)(2)(A). There is no dispute that the conditions of Sec. 2055(b)(2), under which Mrs. Flanigan is deemed to have made a remainder interest transfer to charity, have been met. There is also no dispute that her split interest bequest does not meet the requirements of Sec. 2055(e)(2)(A). Finally, there is no dispute that by the terms of Mr. Flanigan's will, his estate is allowed a charitable deduction only if a charitable deduction is allowable to Mrs. Flanigan's estate. The only disputed question is whether Sec. 2055(e)(2)(A) applies to bequests that satisfy the conditions of Sec. 2055(b)(2), thus disallowing a charitable deduction for Mrs. Flanigan's Sec. 2055(b)(2) deemed remainder interest transfer to charity. The Tax Court held that Sec. 2055(e)(2)(A) does apply to deemed transfers under Sec. 2055(b)(2). Appellants urge that this conclusion is wrong for three reasons.
 
 1. Actual Versus Deemed Transfer
 
 18
 Appellants argue that Sec. 2055(e)(2)(A) limits only actual split interest transfers to charity. They contend that it does not apply to remainder interest transfers to charity under Sec. 2055(b)(2), which are not actual transfers, but rather are deemed, hypothetical, transfers, i.e., legal fictions. They point out that the only actual transfer made by Mrs. Flanigan was the marital deduction bequest to Mr. Flanigan, under which he had a life interest in the marital deduction trust and a general power of appointment by will. In support of their position, appellants cite Estate of Miller v. Commissioner of Internal Revenue, 400 F.2d 407 (3d Cir.1968), and Estate of Pfeifer v. Commissioner of Internal Revenue, 69 T.C. 294 (1977).
 
 
 19
 The appellants are essentially arguing that although there was a "transfer" to charity under Sec. 2055(b)(2), there was no "transfer" for purposes of Sec. 2055(e)(2)(A). As noted by the Tax Court, the express language of Sec. 2055(b)(2) refutes this argument. Sec. 2055(b)(2) states that when its conditions are met, a bequest in trust shall be deemed a transfer to charity by the decedent "[f]or purposes of this section." The term "this section" refers to Sec. 2055 and includes all of Sec. 2055. Because Sec. 2055(e)(2)(A) is part of Sec. 2055, a transfer to charity is deemed to have occurred for purposes of Sec. 2055(e)(2), as well. Thus, Sec. 2055(e)(2)(A) applies to transfers under Sec. 2055(b)(2).[3]
 
 
 20
 Appellants argue that the phrase "for purposes of this section" should be interpreted to mean: for purposes of paragraph (b)(2). We think that if Congress meant to say "for purposes of this paragraph," it would have done so. Section 2055 differentiates between the terms "section," "subsection," "paragraph," and "subparagraph." For example, Sec. 2055(a) uses the phrase "for purposes of this subsection." Subsection (e) refers to "subsection (a)." The last sentence of (b)(2) uses the phrase "under this paragraph." Subparagraph (b)(2)(D) employs the phrase "under subparagraph C." Congress obviously chose these terms carefully. We are not free to ignore their plain meaning. See State of Alabama v. Marshall, 626 F.2d 366, 368-69 (5th Cir.1980) ("the law is well settled that a statute must be interpreted according to the plain language unless a clear contrary legislative intention is shown") (citing United States v. Apfelbaum, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980)), cert. denied, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981)).[4]
 
 
 21
 The cases cited by appellants do not support their position that (e)(2)(A) does not apply to (b)(2). Miller and Pfeifer held that when the specific conditions of Sec. 2055(b)(2) are met, the estate of the first spouse to die is entitled to both a marital deduction under Sec. 2056 and a charitable deduction under Sec. 2055(b)(2). The cases also held that the second spouse's estate is entitled to a charitable deduction under Sec. 2055(b)(1). Miller and Pfeifer did not evaluate the effect of Sec. 2055(e)(2)(A) on Sec. 2055(b)(2) because Sec. 2055(e)(2)(A) did not apply to the estates of the decedents in these cases, who had died before its effective date.
 
 
 22
 Miller and Pfeifer treated the transfer of the marital trust as both a transfer to the surviving spouse under Sec. 2056(a) and a transfer to charity under Sec. 2055(b)(2). Under Miller and Pfeifer, then, Sec. 2055(b)(2)'s deemed transfer to charity is not considered a transfer for purposes of Sec. 2056(a). This part of Miller and Pfeifer is not inconsistent with our interpretation that the phrase "for purposes of this section" in Sec. 2055(b)(2) means there is a transfer for all purposes of Sec. 2055.
 
 
 23
 Appellants argue, however, that by allowing a charitable deduction in both the estate of the first to die under Sec. 2055(b)(2) and in the estate of the surviving spouse under Sec. 2055(b)(1), Miller and Pfeifer demonstrate that the deemed transfer of Sec. 2055(b)(2) is a deemed transfer only for purposes of Sec. 2055(b)(2). They claim that if the deemed transfer of Sec. 2055(b)(2) were considered a transfer for all purposes of Sec. 2055, then the charitable deduction in the second estate under Sec. 2055(b)(1) would necessarily be denied.
 
 
 24
 In Miller, the Third Circuit addressed a similar argument. The Tax Court had found in that case that a deduction from the estate of the first spouse to die under Sec. 2055(b)(2) precluded a deduction from the estate of the surviving spouse under Sec. 2055(b)(1). The Third Circuit rejected this reasoning, stating that "the Tax Court in effect ignored the fact that Secs. 2055(b)(1) and (b)(2) referred to deductions for two separate decedents." Miller, 400 F.2d at 412. Significantly, the Third Circuit said:
 
 
 25
 We cannot agree with the Tax Court that such draftsmenship shows an intent to have preclusive interplay between Secs. 2055(b)(1) and (b)(2) whenever a given husband and wife have the requisite powers of appointment, and to the contrary think that the phrase "for purposes of this section" (referring to Sec. 2055, see 48 T.C. at 270), appearing in both Secs. 2055(b)(1) and (b)(2), if anything, indicates a different statutory pattern, namely that (b)(2) is in addition to (b)(1)--an item of special legislation for certain octogenarians. If Congress so clearly had the intent imputed by the Tax Court, they would have used the phrase "for purposes of this subsection" (referring to "powers of appointment") as they did in the last sentence of subsection (a).
 
 
 26
 Id. at 413. Later, the Tax Court in Pfeifer adopted the Third Circuit's rationale.
 
 
 27
 Thus, the double deductions under (b)(1) and (b)(2) approved in Miller and Pfeifer are based on the interpretation that the phrase "for purposes of this section" refers to all of Sec. 2055. Miller and Pfeifer support, rather than undermine, our conclusion that (e)(2)(A), as part of Sec. 2055, applies to bequests under (b)(2).
 
 
 28
 We conclude that Sec. 2055(b)(2) brings the bequests described therein within the ambit of Sec. 2055. Once there, the bequest becomes subject to the limitations imposed by Sec. 2055 on all charitable transfers, regardless of whether the decedent actually transfers the property or is deemed to have made a transfer by operation of law.[5]
 
 2. Implied Repeal
 
 29
 Appellants correctly point out that applying Sec. 2055(e)(2)(A), which was enacted as part of the Tax Reform Act of 1969, to transfers under Sec. 2055(b)(2), which was enacted in 1956, results in the implied repeal of Sec. 2055(b)(2). The deemed transfer of the remainder interest under Sec. 2055(b)(2) can never meet the requirements of Sec. 2055(e)(2)(A). This is true because the three types of remainder interests allowed under (e)(2)(A) all have features that prevent them from satisfying the conditions of (b)(2). See Estate of Hoskins v. Commissioner of Internal Revenue, 71 T.C. at 384-85 (describing (e)(2)(A) remainder interests). The appellants urge that this result is wrong because it is contrary to the cardinal rule of statutory construction that repeals by implication are not favored.[6]
 
 
 30
 The rule against implied repeals states that "in the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." Morton v. Mancari, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). Here, there is no express statutory language either eliminating or preserving the deduction of Sec. 2055(b)(2) transfers. Sec. 2055(e)(2)(A) does not mention (b)(2). Nor does the legislative history of (e)(2)(A) mention (b)(2). The legislative history of (e)(2)(A) reveals that the purpose of (e)(2)(A) was to prevent abuses of the charitable remainder devise. See H.R.Rep. No. 91-413 (Part I), 91st Cong., 1st Sess. 58, U.S.Code Cong. & Admin.News 1969, pp. 1645, 1703, reprinted in 1969-3 C.B. 200, 237-38; S.Rep. No. 91-552 U.S.Code Cong. & Admin.News 1969, p. 2114, 91st Cong., 1st Sess. 87, reprinted in 1969-3 C.B. 423, 479-82. Although (b)(2) contains its own safeguards against some of these abuses, such as encroachment on the trust corpus, (b)(2) remainder interests are susceptible to others, such as manipulation of the income stream. The most that can be said is that the legislative history is ambiguous on the applicability of (e)(2)(A) to (b)(2).
 
 
 31
 Despite the lack of an affirmative showing of an intent to repeal, the rule against implied repeals is not violated here because (e)(2)(A) and (b)(2) are irreconcilable, i.e., they can not be interpreted in such a way as to give each full effect. Appellants suggest that (b)(2) and (e)(2)(A) can both be given effect by treating (b)(2) as a completely independent statute, not subject to the limitations of Sec. 2055(e)(2)(A). As our discussion above makes clear, however, (b)(2) by its plain language is part of Sec. 2055. Because (e)(2)(A) limits deductions "under this section," meaning Sec. 2055, it necessarily limits any deduction pursuant to (b)(2). Thus, (b)(2) cannot be read in the manner appellants suggest.[7]
 
 3. Ejusdem Generis
 
 32
 The appellants argue that applying (e)(2)(A) to (b)(2) transfers violates the rule of ejusdem generis, which states that "when there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment." United States v. Chase, 135 U.S. 255, 260, 10 S.Ct. 756, 757, 34 L.Ed. 117 (1890). However, as the Supreme Court stated in Helvering v. Stockholm Enskilda Bank, 293 U.S. 84, 89, 55 S.Ct. 50, 52, 79 L.Ed. 211 (1934), this rule "is, like other canons of statutory construction, only an aid to the ascertainment of the true meaning of the statute." It is not controlling. We need not resort to the canon here, where the proper interpretation of Sec. 2055 is apparent on its face. Moreover, as the Tax Court noted, (e)(2)(A), as enacted, had certain carefully enumerated exceptions. It expressly excepted from its coverage remainder interests in a personal residence or farm. This suggests the inappropriateness of implying further exceptions by application of the rule of ejusdem generis. It seems clear that if Congress meant to except (b)(2) transfers from (e)(2)(A)'s coverage, it would have done so expressly in the language of the statute itself.
 
 CONCLUSION
 
 33
 We conclude that Sec. 2055(e)(2)(A) limits the deduction of Sec. 2055(b)(2) deemed transfers. Therefore, the decision of the Tax Court is
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 Section 2055, entitled "Transfers for Public, Charitable, and Religious Uses," provides:
 (a) In general.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers ... [to designated charitable organizations].
 For purpose of this subsection, the complete termination before the date prescribed for the filing of the estate tax returns of a power to consume, invade, or appropriate property for the benefit of an individual before such power has been exercised by reason of the death of such individual or for any other reason shall be considered and deemed to be a qualified disclaimer with the same full force and effect as though he had filed such qualified disclaimer.
 (b) Powers of appointment.--
 (1) General rule.--Property includible in the decedent's gross estate under section 2041 (relating to powers of appointment) received by a donee described in this section shall, for purposes of this section, be considered a bequest of such decedent.
 (2) Special rule for certain bequests subject to power of appointment.--For purposes of this section, in the case of a bequest in trust, if the surviving spouse of the decedent is entitled for life to all of the net income from the trust and such surviving spouse has a power of appointment over the corpus of such trust exercisable by will in favor of, among others, organizations described in subsection (a)(2), such bequests in trust, reduced by the value of the life estate, shall, to the extent such power is exercised in favor of such organizations, be deemed a transfer to such organizations by the decedent if--
 (A) no part of the corpus of such trust is distributed to a beneficiary during the life of the surviving spouse;
 (B) such surviving spouse was over 80 years of age at the date of the decedent's death;
 (C) such surviving spouse by affidavit executed within 6 months after the death of the decedent specifies the organizations described in subsection (a)(2) in favor of which he intends to exercise the power of appointment and indicates the amount or proportion each such organization is to receive; and
 (D) the power of appointment is exercised in favor of such organization and in the amounts or proportions specified in the affidavit required under subparagraph (C).
 The affidavit referred to in subparagraph (C) shall be attached to the estate tax return of the decedent and shall constitute a sufficient basis for the allowance of the deduction under this paragraph in the first instance subject to a later disallowance of the deduction if the conditions herein specified are not complied with.
 (c) Death taxes payable out of bequests.--If the tax imposed by section 2001, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this section, then the amount deductible under this section shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes.
 (d) Limitation on deduction.--The amount of the deduction under this section of any transfer shall not exceed the value of the transferred property required to be included in the gross estate.
 (e) Disallowance of deductions in certain cases.--
 (1) No deduction shall be allowed under this section for a transfer to or for the use of an organization or trust described in section 508(d) or 4948(c)(4) subject to the conditions specified in such sections.
 (2) Where an interest in property (other than a remainder interest in a person residence or forum or an undivided portion of the decedent's entire interest in property) passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless--
 (A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664) or a pooled income fund (described in section 642(c)(5)), or
 (B) in the case of any other interest, such interest is in the form of a guaranteed annuity or is a fixed percentage distributed yearly of the fair market value of the property (to be determined yearly).
 
 
 [2]
 The repeal was effective with respect to estates of decedents dying after October 4, 1976. Sec. 2055(b)(2) was added to the Tax Code in 1956, but was retroactively effective for decedents dying after August 16, 1954
 
 
 [3]
 We note that Sec. 2055(e)(2)(A), by its express terms, limits deductions "under this section," i.e., under Sec. 2055, of which (b)(2) is part and parcel
 
 
 [4]
 Appellants acknowledge that the legislative histories of Secs. 2055(b)(2) and (e)(2)(A) are not instructive in determining the relationship between the two subsections. Appellants' Brief at 26-27
 
 
 [5]
 The Tax Court in this case rejected appellants' argument that a (b)(2) deemed transfer is a transfer only for purposes of (b)(2) for the additional reason that (b)(2) is not a separate allowance provision. The Tax Court quoted from Estate of Hoskins v. Commissioner of Internal Revenue, 71 T.C. 379 (1978), which held that (b)(2) is only definitional and does not itself allow a charitable deduction:
 Section 2055(b)(2) does not disclose the consequences of a transfer to charity by the decedent. It is necessary to return to Section 2055(a) in order to ascertain that the amount of a transfer to charity shall be deducted from the value of the gross estate in determining the value of the taxable estate.
 Id. at 383. From this the Tax Court concluded that (b)(2) does not operate independently of subsections (a), (c), (d), or (e). We are inclined to agree with the Tax Court that 2055(a) makes provision for the allowance of the deduction, and that (b)(2) is merely a definitional provision, bringing the narrowly specified trusts within the definition of a "transfer" for purposes of 2055(a) even though there is no actual transfer to charity. However, our decision need not rest on this rationale.
 
 
 [6]
 Appellees argue that there was no implied repeal because the effective date provision of (e)(2)(A), i.e., the Tax Reform Act of 1969, Pub.L. No. 91-172, Sec. 201(g)(4)(A)-(C), 83 Stat. 487, grandfathered in certain decedents to whom (e)(2)(A) would not apply. However, there is no dispute that when (e)(2)(A) applies, it prevents the deduction of (b)(2) deemed transfers. We think this is equivalent to an implied repeal
 
 
 [7]
 The appellants argue that the legislative history surrounding the express repeal of (b)(2) in 1976 demonstrates that (b)(2) was not impliedly repealed by the Tax Reform Act of 1969. We find this legislative history ambiguous and not helpful