**Rafeh–Rafie ARDESTANI, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 89–8458.

United States Court of Appeals, Eleventh Circuit.

July 6, 1990.

David N. Soloway, Carolyn F. Soloway, Frazier and Soloway, Atlanta, Ga., for petitioner.

Lory D. Rosenberg, Cambridge, Mass., Harvey Kaplan, Boston, Mass., for amicus.

David J. Kline, David V. Bernal, Dept. of Justice, Office of Immigration Litigation, Washington, D.C., for respondent.

Before FAY, Circuit Judge, RONEY *, Senior Circuit Judge, and PITTMAN **, Senior District Judge.

FAY, Circuit Judge:

This case presents the first impression issue for this circuit of whether or not the Equal Access to Justice Act (EAJA) applies to immigration deportation proceedings. Appellant Rafeh–Rafie Ardestani was awarded attorney fees under EAJA as the prevailing party in a deportation proceeding by an immigration judge. Appellee the Immigration and Naturalization Service (INS) appealed, arguing that EAJA was inapplicable to deportation proceedings. Upon review, the Board of Immigration Appeals (Board) vacated the decision of the immigration judge and concluded that deportation proceedings are not within the scope of EAJA. Ardestani appeals. Our examination of the relevant statutes has revealed no Congressional intent that EAJA apply to deportation proceedings.

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Virgil Pittman, U.S. Senior District Judge for the Southern District of Alabama, sitting by designation.

Accordingly, we affirm the Board's decision because we find no subject matter jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Ardestani, an Iranian woman, entered the United States as a visitor on December 14, 1982. She remained in this country legitimately pursuant to authorized extensions until May 30, 1984. Fearing persecution upon her return to Iran, Ardestani applied for asylum in the United States on July 9, 1984. The United States Department of State informed INS that Ardestani's concern was well founded.

On February 15, 1985, INS notified Ardestani of its intention to deny her request for political asylum, but allowed her the opportunity to submit additional evidence in support of her application. Ardestani claims that she never received this notification. INS denied Ardestani's asylum application on February 12, 1986. This decision was based upon Ardestani's failure to disclose her previous safe haven in Luxembourg, a liberal country in granting residency to political refugees, and her attempt to use the political asylum process in order to disguise her original entry into the United States as an immigrant intending to stay permanently rather than as a refugee seeking asylum. Because her asylum application was denied, INS specified that Ardestani could not remain in the United States beyond February 27, 1986, without its permission. Ardestani's counsel informed INS that her client merely stayed at a hotel in Luxembourg for three days for the purpose of obtaining a visa from the American embassy in order to enter the United States and that she never applied for residency in Luxembourg.

On March 31, 1986, INS issued Ardestani an order to show cause why she should not be deported because she had entered the United States as a nonimmigrant and had remained longer than the time permitted by INS. Appellant's counsel concedes that notification of deportation proceedings was sent to Ardestani on May 29, 1986. Appellant's Brief at 3. Significantly, that notification contains the following notice:

NOTE: YOU MAY BE REPRESENTED IN THIS PROCEEDING, *AT NO EXPENSE TO THE GOVERNMENT*, BY AN ATTORNEY OR OTHER INDIVIDUAL AUTHORIZED AND QUALIFIED TO REPRESENT PERSONS BEFORE AN IMMIGRATION JUDGE. IF YOU WISH TO BE SO REPRESENTED, YOUR ATTORNEY OR REPRESENTATIVE SHOULD APPEAR WITH YOU AT THE HEARING.

R1–120 (emphasis added).

At the deportation hearing conducted on June 11, 1986, Ardestani conceded that she was deportable, but renewed her asylum application. Additionally, the immigration judge received into evidence the show cause order, the State Department letter regarding her asylum request, and a copy of her passport. On October 26, 1986, the immigration judge entered his decision and order, stating that Ardestani had established a well founded fear of persecution under the Immigration and Nationality Act and granting her asylum for one year. INS did not appeal this decision.

Achieving the relief sought in the deportation proceedings, Ardestani's counsel applied for attorney fees and expenses as the prevailing party under EAJA. The application included letters from the counsel to the INS district director and other documents which were not part of the record at the deportation hearing. INS did not respond to this application.

On January 27, 1989, the immigration judge issued his opinion in Ardestani's deportation proceedings. Recognizing that "EAJA provides for awards for attorney fees in adjudicatory proceedings before administrative agencies" under 5 U.S.C. section 504(a)(1), the immigration judge concluded that Ardestani was the prevailing party and that the opposition of INS was not substantially justified. R1–62. The immigration judge awarded attorney fees in the amount of $1,071.85.

On February 9, 1989, INS appealed this award of attorney fees to the Board of

Immigration Appeals. INS contended that EAJA was inapplicable to deportation proceedings; therefore, the immigration judge was not authorized to award attorney fees. Alternatively, INS argued that its position was substantially justified because, as Ardestani conceded, deportation was warranted under the immigration statute. Ardestani responded that attorney fees were available under EAJA for a deportation proceeding and that the position of INS was not substantially justified.

On May 12, 1989, the Board vacated the award of attorney fees and costs by the immigration judge and denied the application. Disagreeing that deportation proceedings are encompassed by EAJA, the Board reasoned that the binding regulations of the United States Attorney General in 28 C.F.R. section 24.103, providing that deportation proceedings are not within the scope of EAJA, presented "a more fundamental reason" to vacate the decision of the immigration judge. R1–2. The Board, therefore, determined that the immigration judge had no authority to award attorney fees and costs under EAJA. Pursuant to 5 U.S.C. section 504(c)(2), Ardestani appealed to this court.

## II. EXPLICATION

### A. Standards of Review

■ When a decision by the Board of Immigration Appeals is supported by substantial evidence, "Congress has mandated that we defer to the Board and affirm." *Blackwood v. INS,* 803 F.2d 1165, 1168 (11th Cir.1986) (per curiam); 8 U.S.C. § 1105a(a); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Arauz v. Rivkind,* 845 F.2d 271, 275 (11th Cir.1988); *Chavarria v. United States Dep't of Justice,* 722 F.2d 666, 670 (11th Cir.1984). As *Arauz, Blackwood* and *Chavarria* demonstrate, however, the substantial evidence standard applies to review of the factual evidence considered by the immigration judge and Board in a deportation decision and not a purely legal issue as we have in this case. Because there are no contested factual issues in this case and we decide solely a question of law, our review is plenary. *Hamer v. City of Atlanta,* 872 F.2d 1521, 1526 (11th Cir.1989); *Bailey v. Carnival Cruise Lines, Inc.,* 774 F.2d 1577, 1578 (11th Cir.1985).

### B. Statutory Analysis

■ To determine the applicability of EAJA to deportation proceedings, we must examine the interaction of the relevant statutes and regulations in order to maintain the integrity of Congressional intent. We are guided in this inquiry by principles of statutory interpretation established by the Supreme Court. "The starting point in statutory interpretation is 'the language [of the statute] itself.'" *United States v. James,* 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)); *Newman v. Soballe,* 871 F.2d 969, 971 (11th Cir.1989). Reviewing courts assume "'that the legislative purpose is expressed by the ordinary meaning of the words used'" in the statute. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (quoting *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)); *Director, Office of Workers' Compensation Programs v. Drummond Coal Co.,* 831 F.2d 240, 245 (11th Cir.1987); *see INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987). The "strong presumption" that the plain language of the statute expresses Congressional intent is rebutted only in "'rare and exceptional circumstances,'" when contrary legislative intent is expressed clearly. *Cardoza–Fonseca,* 480 U.S. at 432 n. 12, 107 S.Ct. at 1213 n. 12 (citations omitted); *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *see Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *United States v. Hurtado,* 779 F.2d 1467, 1476–77 (11th Cir.1985); *National Wildlife Fed'n v. Marsh,* 721 F.2d 767, 773–74 (11th Cir.1983).

We also must consider the important principle of statutory construction concerning the waiver of sovereign immunity by the United States. The Supreme Court has held that "[i]n analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign." *Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983); *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951); *Loftin v. Rush,* 767 F.2d 800, 808 (11th Cir.1985). The necessary consent to waive this traditional immunity must be express and not implied. *Library of Congress,* 478 U.S. at 318, 106 S.Ct. at 2963; *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947). A court may not "grant attorneys' fees and costs against the United States in the absence of a congressional or constitutional waiver of sovereign immunity which grants it the authority to do so." *Ewing & Thomas, P.A. v. Heye,* 803 F.2d 613, 616 (11th Cir.1986). Since EAJA waives sovereign immunity in allowing attorney fees against the United States, it must be construed strictly. *Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1494 (11th Cir.), *vacated in part on other grounds,* 804 F.2d 1573 (11th Cir.1986); *see In re Perry,* 882 F.2d 534, 538 (1st Cir. 1989); *Owens v. Brock,* 860 F.2d 1363, 1366 (6th Cir.1988); *Action on Smoking & Health v. Civil Aeronautics Bd.,* 724 F.2d 211, 225 (D.C.Cir.1984); *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1385 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983).

EAJA contains the following two similar provisions for attorney fees and costs:

An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust. Whether or not the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and other expenses are sought.

5 U.S.C. § 504(a)(1).

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Both of these sections direct the court to award fees and expenses to a prevailing party in an adversary adjudication by administrative agencies as authorized by section 504(b)(1)(C). 5 U.S.C. § 504(b)(1)(C); 28 U.S.C. § 2412(d)(3). An "adversary adjudication" is defined as "an adjudication under section 554" of the Administrative Procedure Act (APA) in which the position of the United States is represented by counsel. 5 U.S.C. § 504(b)(1)(C).

While there has been no dispute in this case that a deportation proceeding is an adjudication where the position of the United States is represented by counsel, INS contends that a deportation proceeding is an adversary adjudication under the Immigration and Nationality Act (the Act)[1] and not under the APA. Two circuit courts have polarized the analysis of the phrase "an adjudication under section 554" of section 504(b)(1)(C) in order to determine the relationship of section 554 of the APA to an EAJA adversary adjudication. *Owens*

---

**1.** The Act provides that mandatory deportation proceedings require that a "[d]etermination of deportability in any case shall be made only upon a record made in a proceeding before a special inquiry officer, at which the alien shall have reasonable opportunity to be present." 8 U.S.C. § 1252(b).

*v. Brock,* 860 F.2d 1363 (6th Cir.1988); *Escobar Ruiz v. INS,* 838 F.2d 1020 (9th Cir.1988) (en banc). Ardestani contends that *Escobar Ruiz* controls this case, while INS argues that *Owens* should dictate our result.

Since appellant has argued that EAJA creates a definitional bridge by using the APA to place deportation proceedings within EAJA for the purpose of awarding attorney fees, we also must examine this language. Both the Sixth and Ninth Circuits examined the explanatory statement of the EAJA conference committee, which delineated that the statute "defines adversary adjudication as an agency adjudication defined under the Administrative Procedures Act where the agency takes a position through representation by counsel or otherwise." H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 23 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 5003, 5012; *Owens,* 860 F.2d at 1365; *Escobar Ruiz,* 838 F.2d at 1023. The Ninth Circuit interpreted this statement to mean that the determination of an adversary adjudication requires "look[ing] at the procedures by which deportation hearings are actually conducted, rather than determining whether such hearings are technically governed by the APA." *Escobar Ruiz,* 838 F.2d at 1023. After determining that the procedures of the Act and the APA are "fundamentally identical," the Ninth Circuit concluded that a deportation proceeding conforms to APA requirements and "constitutes an adversary adjudication as defined under the APA." *Id.* at 1025.

The Sixth Circuit interpreted the same conference committee statement contrariwise: "[T]he use of a concrete term such as 'defined' leads us to believe it probable that Congress intended precisely the opposite interpretation of section 504(b)(1)(C) from the one taken by the Ninth Circuit." *Owens,* 860 F.2d at 1366. The Sixth Circuit bolstered its conclusion by commentary from the model rules for agency implementation of EAJA issued by the Administrative Conference of the United States (ACUS), wherein ACUS expressed concern that a liberal interpretation might provide for broader applicability than Congress intended. 46 Fed.Reg. 32,901 (1981); *Owens,* 860 F.2d at 1366. As a result of this concern, ACUS eliminated EAJA coverage for agency proceedings voluntarily using section 554 procedures and commented that "[t]here remains, however, the difficult question of what proceedings are 'under section 554.' Where it is clear that certain categories of proceedings are governed by this section, agencies should list the types of proceedings in their rules." 46 Fed.Reg. at 32,901; *Owens,* 860 F.2d at 1366. Juxtaposing the legislative history with the construction principle that waiver of immunity is to be narrowly construed, the Sixth Circuit concluded that the Ninth Circuit opinion "cannot withstand scrutiny" and is merely an advisory opinion since the original panel's determination that the plaintiff in *Escobar Ruiz* was not a prevailing party was unaffected by the *en banc* question of the application of EAJA to awards for attorney fees. *Owens,* 860 F.2d at 1366 & n. 2.

Recently scrutinizing the reference in EAJA to "under section 554" of the APA, the District of Columbia Circuit also rejected the Ninth Circuit's interpretation. *St. Louis Fuel & Supply Co. v. FERC,* 890 F.2d 446, 449–51 (D.C.Cir.1989). Finding that Department of Energy proceedings are outside the "adversary adjudication" coverage of EAJA, the District of Columbia Circuit concluded that "under" in section 504(b)(1)(C) had the meaning of "subject [or pursuant] to" or "by reason of the authority of" because of the meaning of the word 'under' in other sections of EAJA. *Id.* at 450. That court stated: "We are unwilling so [as the Ninth Circuit] to stretch the word "under" because the usage of the word in EAJA itself tugs against such creative reading, and because we are bound to honor the canon that waivers of the sovereign's immunity must be strictly construed." *Id.* at 449–50; *see* 5 U.S.C. §§ 504(a)(2), (c)(2), (d). The court also found no definitional distinction in the House and Senate bills. *St. Louis Fuel & Supply Co.,* 890 F.2d at 450–51. We are persuaded by the reasoning of the Sixth and District of Columbia Circuits as well as

by a recent Third Circuit decision in accord with our rationale herein that there is no " 'clearly expressed legislative intention' " contrary to the statutory language "which would require us to question the strong presumption that Congress expresses its intent" that "under" in section 554 means "governed by" or "subject to" section 554. *Cardoza–Fonseca*, 480 U.S. at 432 n. 12, 107 S.Ct. at 1213 n. 12 (citations omitted); *Clarke v. INS*, 904 F.2d 172 (3d Cir.1990).

Furthermore, the Supreme Court has held that the hearing requirements of the APA do not govern deportation proceedings, which are controlled under section 242 of the Act, 8 U.S.C. section 1252. *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955). Discussing the history of the immigration laws, the Court conceded that, before amendment of the immigration laws in 1951, it had held that the APA applied to deportation proceedings in *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950), *modified on other grounds*, 339 U.S. 908, 70 S.Ct. 564, 94 L.Ed. 1336 (1950). *Marcello*, 349 U.S. at 306, 75 S.Ct. at 759. In *Marcello*, the Court had to determine whether or not an additional amendment to the immigration laws in 1952 had restored the law to its former position, where the hearing provisions of the APA would govern deportation proceedings. While the Court concluded that the provisions for hearings under the APA and the Act were identical in many respects, it attributed these similarities to the fact that the APA was a model for the Act. *Marcello*, 349 U.S. at 307–08, 75 S.Ct. at 759–60. The Court determined that section 242 of the Act is a deliberate effort by Congress to create a separate procedure tailored to deportation proceedings:

> From the Immigration Act's detailed coverage of the same subject matter dealt with in the hearing provisions of the Administrative Procedure Act, it is clear that Congress was setting up a specialized administrative procedure applicable to deportation hearings, drawing liberally on the analogous provisions of the Administrative Procedure Act and adapting them to the particular needs of the deportation process. The same legis-

lators ... sponsored both the Administrative Procedure Act and the Immigration Act, and the framework of the latter indicates clearly that the Administrative Procedure Act was being used as a model. But it was intended only as a model, and when in this very particularized adaptation there was a departure from the Administrative Procedure Act—based on novel features in the deportation process—surely it was the intention of the Congress to have the deviation apply and not the general model.

> [W]e cannot ignore the background of the 1952 immigration legislation, its laborious adaptation of the Administrative Procedure Act to the deportation process, the specific points at which deviations from the Administrative Procedure Act were made, the recognition in the legislative history of this adaptive technique and of the particular deviations, and the direction in the statute that the methods therein prescribed shall be the sole and exclusive procedure for deportation proceedings.

*Marcello*, 349 U.S. at 308–09, 310, 75 S.Ct. at 760–61, 762.

*Marcello* has not been legislatively or judicially overruled. *See Ho Chong Tsao v. INS*, 538 F.2d 667, 669 (5th Cir.1976) (per curiam), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977); *Giambanco v. INS*, 531 F.2d 141, 144 (3d Cir.1976); *Cisternas–Estay v. INS*, 531 F.2d 155, 158–59 (3d Cir.), *cert. denied*, 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 127 (1976) (These cases recognize the inapplicability of section 554 to deportation proceedings under the procedures of the Act.). In *Ho Chong Tsao*, the former Fifth Circuit followed the Third Circuit's reliance on *Marcello* in holding that "the APA has no relevance" to the Board's review of an immigration judge's refusal to revoke the alien petitioner's deportation order. *Ho Chong Tsao*, 538 F.2d at 669; *see Giambanco*, 531 F.2d at 145. Since EAJA defines an "adversary adjudication" as an "adjudication under section 554" of the APA, *Marcello* remains authoritative in its determination that deportation proceedings under section 242 of the Act

are not adjudications under section 554 of the APA.

Additional persuasive support that deportation proceedings are not under EAJA is found in the implementing regulation for EAJA by the Attorney General. 28 C.F.R. 24.103 (1982); *see* 8 U.S.C. § 1103(a). This regulation lists the proceedings covered by EAJA, with "proceeding" defined as an "adversary adjudication" under section 554 of the APA. 28 C.F.R. 24.102(b), (e) & 24.103. Deportation proceedings have not been added in the most recent promulgation of this list, which includes Drug Enforcement Administration hearings, handicap discrimination hearings and civil rights hearings. 28 C.F.R. 24.103 (1989). This regulation also states that "[i]f a proceeding includes both matters covered by the Act [EAJA] and matters specifically excluded from coverage, any award made will include only fees and expenses related to covered issues." 28 C.F.R. 24.103(b). Deportation proceedings are omitted from the specific list of included adversary adjudication proceedings covered by EAJA. *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (" '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972) (per curiam))).

Furthermore, supplemental information published with the preceding interim rule before codification of this regulation reveals that deportation proceedings intentionally were excluded pursuant to *Marcello.* 46 Fed.Reg. 48,922 (1981). Presumably, Congress was aware of this administrative interpretation when it reenacted and amended 5 U.S.C. section 504 in 1985, without including deportation proceedings. The indication is that the interpretation by the Attorney General influenced Congressional action. *See Cannon v. University of Chicago,* 441 U.S. 677, 698–99, 99 S.Ct. 1946, 1958–59, 60 L.Ed.2d 560 (1979); *Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978).

Congress has changed or clarified the coverage of EAJA since its initial enactment in 1980 in response to judicial and legislative interpretations. In 1985, for example, it expanded the definition of "adversary adjudication" to include any appeal of a decision made under section 6 of the Contract Disputes Act of 1978 to overrule the Federal Circuit's *Fidelity Constr. Co.* holding that EAJA was inapplicable to these decisions. 5 U.S.C. § 504(b)(1)(C)(ii); H.R.Rep. No. 120, 99th Cong., 1st Sess., pt. 1, at 15 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 144; *see also* 5 U.S.C. § 504(b)(1)(C)(iii) (In 1986, Congress amended EAJA to include hearings conducted under chapter 38 of title 31, Administrative Remedies and False Claims and Statements.). Additionally, the legislative history of the 1985 EAJA, Extension and Amendments clarified coverage for Social Security Administration hearings at the administration level without amending EAJA. The House Report strongly implied that such hearings are "adjudications" under section 554 of the APA so that they become "adversary adjudications" under EAJA when the position of the United States is represented by counsel. H.R.Rep. No. 120, 99th Cong., 1st Sess., pt. 1, at 10 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 138–39.

Title 5 U.S.C. section 504(c)(1) provides that "[a]fter consultation with the Chairman of the Administrative Conference of the United States, each agency shall by rule establish uniform procedures for the submission and consideration of applications for an award of fees and other expenses." Following review of the relevant regulations, ACUS did not criticize the Attorney General's interpretation regarding the inapplicability of EAJA to deportation proceedings. *See* 47 Fed.Reg. 15,774–76 (1982). Although Congress was silent as to the applicability of EAJA to deportation proceedings, the Attorney General's relevant regulation enacted after consultation with ACUS is a reasonable construction of EAJA. "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agen-

cy's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *De Cuellar v. Brady,* 881 F.2d 1561, 1565 (11th Cir.1989); *Shoemaker v. Bowen,* 853 F.2d 858, 861 (11th Cir.1988). The Attorney General permissibly interpreted the EAJA phrase "under section 554" by concluding in 28 C.F.R. section 24.103 that deportation proceedings are not covered by the APA and, therefore, are not within the scope of EAJA.

Having determined that deportation proceedings are not included under EAJA for the purpose of awarding attorney fees to the prevailing party, we must consult the Act for guidance on this question, as instructed by *Marcello.* EAJA also directs us to the Act by the admonition that "[e]xcept as otherwise specifically provided by statute," it should be followed. 28 U.S.C. § 2412(d)(1)(A). Section 292 of the Act states that "[i]n any exclusion or deportation proceedings, ... the person concerned shall have the privilege of being represented (*at no expense to the Government*) by such counsel, authorized to practice in such proceedings, as he shall choose." 8 U.S.C. § 1362 (emphasis added). In addition to this provision clearly barring attorney fees awarded against the government, Ardestani was informed specifically in her notification of her deportation hearing before the immigration judge that she would not be entitled to attorney fees in language which mirrors the statute.

Even if we had not decided that EAJA does not control the award of attorney fees in deportation proceedings, the Supreme Court has established principles of construction for harmonizing two statutes. "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974); *Smith v. Christian,* 763 F.2d 1322, 1325 (11th Cir.1985) (per curiam); *see also Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976) ("It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum."). The Court also has held that "[i]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton,* 417 U.S. at 550, 94 S.Ct. at 2482; *Estate of Flanigan v. Commissioner,* 743 F.2d 1526, 1532 (11th Cir.1984).

Section 292 of the Act expressly states that individuals involved in deportation proceedings shall have the privilege of representation by counsel of choice "at no expense to the government." 8 U.S.C. § 1362. While EAJA removes common law and sovereign immunity barriers to awarding attorney fees against the government in appropriate cases, there is no indication that it was intended to abrogate particular statutory provisions specifically barring fee shifting. *See, e.g.,* H.R.Rep. No. 1418, 96th Cong., 2d Sess. at 8–9 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984, 4986–88. This court has stated that there are three predicate findings to an award of fees and expenses under EAJA: "(1) the litigant opposing the United States must be a 'prevailing party'; (2) the government's position must not have been substantially justified; and (3) there must be no circumstances that make an award against the government unjust." *Jean v. Nelson,* 863 F.2d 759, 765 (11th Cir.1988), *cert. granted,* — U.S. ——, 110 S.Ct. 862, 107 L.Ed.2d 947 (1990). We conclude that the first two prerequisites concern the facts of the individual case and that they are not issues in this case because we are reviewing the legal issue of the availability of attorney fees when the alien is successful against the government at a deportation proceeding. We find that the third requirement for awarding attorney fees under EAJA is controlling because section 1362 explicitly precludes attorney fee awards in deportation proceedings. It would be unjust to allow such an award against the govern-

ment since Congress specifically has determined that fees against the government are not available in this context.

The general language of EAJA is insufficient to overcome the absolute words of the Act. The primary purpose of EAJA is "to increase the accessibility to justice—in administrative proceedings and civil actions." H.R.Rep. No. 120, 99th Cong., 1st Sess., pt. 1, at 8 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 136. In rejecting the Second Circuit's reliance on the "broad purposes" of a later-enacted statute to establish partial repeal by implication, the Supreme Court held that "it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the [later-enacted] statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525–26, 107 S.Ct. 1391, 1393–94, 94 L.Ed.2d 533 (1987) (per curiam) (emphasis in original); *see Patel v. Quality Inn South*, 846 F.2d 700, 704 (11th Cir.1988) ("[A]mendments by implication are disfavored. Only when Congress' intent to repeal or amend is clear and manifest will we conclude that a later act implicitly repeals or amends an earlier one."), *cert. denied,* —— U.S. ——, 109 S.Ct. 1120, 103 L.Ed.2d 182 (1989). Relying on and reinforcing the policy in section 1362 against shifting to the government the expense of aliens' legal representation in deportation proceedings, this court held that excludable aliens are not entitled to representation at government expense in habeas corpus proceedings challenging denial of parole. *Perez–Perez v. Hanberry*, 781 F.2d 1477, 1480–81 (11th Cir.1986). Cases from this circuit in which attorney fees have been allowed under EAJA in immigration proceedings are distinguishable because they have not involved the specific facts of a deportation proceeding regarding a single alien. *See, e.g., Jean v. Nelson*, 863 F.2d 759 (This complex Haitian refugee litigation concerned basic constitutional issues regarding mass exclusion hearings, conducted without counsel, and detention of class members pending determination of their political asylum applications.); *Haitian Refugee Center*, 791 F.2d 1489 (Haitian class successfully challenged on due pro-

cess and equal protection grounds INS accelerated processing of applications for asylum as unreasonable.). These cases involve attacks upon the INS program and not proceedings under the Act.

██ If we were to allow attorney fee awards against the government in deportation proceedings, then we effectively would sanction a partial repeal of section 1362 by implication. Such a holding would disregard sovereign immunity principles as well as authority advising against repeals by implication. Moreover, the different purposes of the Act and EAJA do not conflict. There has been no convincing showing in this case that Congress intended to repeal the bar of fee shifting in the Act or that EAJA and the Act are irreconcilable. *See Radzanower*, 426 U.S. at 154, 96 S.Ct. at 1992; *United States v. Devall*, 704 F.2d 1513, 1518 (11th Cir.1983). We find no "positive repugnancy" between EAJA and the Act regarding awarding attorney fees against the government so that "they cannot mutually coexist." *Radzanower*, 426 U.S. at 155, 96 S.Ct. at 1993. We, therefore, hold that the explicit bar on attorney fees against the government found in the Act is to be regarded as a narrow exception to the general provisions of EAJA and that partial repeal of section 1362 by implication is unwarranted to achieve the broad purposes of EAJA.

This holding also eliminates subject matter jurisdiction. Where express statutory preclusion occurs, another statute may not be used to circumvent that exception and, in this case, subject matter jurisdiction is lost. *See Rhodes v. United States*, 760 F.2d 1180, 1183 (11th Cir.1985) (In concluding that subject matter jurisdiction did not exist, this court found that the APA "excludes cases where liability is precluded expressly or by implication, so it says nothing to bypass express or implied preclusion in other law, and confers no jurisdiction to do so." (citing *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977))); *see also Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co.*, 827 F.2d 1454, 1456–57 (11th Cir.1987) (per curiam) (In a statutory, defi-

nitional interpretation, this court found that nonsignatory subcontractors and sureties were not "employers" under ERISA, thereby precluding federal subject matter jurisdiction over claims against nonsignatories for signatory's failure to make contributions to employee benefit plans.). "[L]ack of subject matter jurisdiction ... requires dismissal on the court's own motion if not raised by the parties." *Lipofsky v. New York State Workers Compensation Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988); *see* Fed.R.Civ.P. 12(h)(3).

We reiterate that we are not reviewing this case factually, but legally. We also stress the narrowness of our holding. Ardestani obtained the asylum relief that she sought. We simply find no statutory basis for her requested award of attorney fees against the government under EAJA, as discussed herein. Accordingly, we conclude that subject matter jurisdiction is lacking and that the Board of Immigration Appeals correctly found that the immigration judge had no statutory authority to award attorney fees to Ardestani. We AFFIRM.

PITTMAN, Senior District Judge, dissenting:

I dissent from the majority's holding and would adopt the holding and rationale of *Escobar Ruiz v. I.N.S.*, 838 F.2d 1020 (9th Cir.1988) (*en banc*), *aff'g*, 813 F.2d 283 (9th Cir.1987). In my opinion, the majority's decision overlooks Congress' basic purpose in enacting the Equal Access to Justice Act (EAJA). EAJA provides for the payment of attorney fees arising out of an adversary adjudication before a government agency unless the government's position was substantially justified. *See* 5 U.S.C. § 504(a)(1).

In 1980, Congress enacted EAJA and, in 1985, reaffirmed and made permanent the provisions of the Act. The legislative history of the Act demonstrates that the basic purpose of the Act was "to reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, ... against the United States, unless the Government action was substantially justified." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 6 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984. *See* H.R. No. 120, 99th Cong., 1st Sess. 4 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132–33. This language evidences Congress' intent that a private party who prevails against unwarranted government action such as that exhibited in this case would be allowed to recover the funds expended to vindicate her rights. The facts of this case demonstrate the type of totally unjustified actions on the part of a government agency that Congress envisioned would be covered by EAJA. The Appellee, INS, denied the Appellant's request for political asylum and began deportation proceedings against the Appellant even though the INS knew that the State Department had determined that the Appellant had a well founded fear of persecution. This circuit in *Jean v. Nelson*, 863 F.2d 759 (11th Cir.1988), awarded attorney fees following challenged INS hearings under the EAJA. The three predicate findings necessary to award fees and expenses under the EAJA set out in that case have been met in this case.

Section 504(a)(1) applies to "adversary adjudications" before a government agency. The statute defines an "adversary adjudication" as "an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of establishing or fixing a rate or for the purpose of granting or renewing a license,...." 5 U.S.C. § 504(b)(1)(C). The legislative history of this section indicates that Congress intended an "adversary adjudication" to be defined as "an agency adjudication defined under the Administrative Procedures Act [section 554] where the agency takes a position through representation by counsel or otherwise." H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 23 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 5003, 5012.[1] An adversary adjudication "defined

---

1. The majority's decision relies upon *St. Louis Fuel & Supply Co. v. FERC*, 890 F.2d 446, 449–51

under" section 554 is an adjudication "required by statute to be determined on the record after opportunity for. an agency hearing, ..." 5 U.S.C. § 554(a). *See Smedberg Machine & Tool, Inc. v. Donovan*, 730 F.2d 1089, 1092 (7th Cir.1984); *Cornella v. Schweiker*, 728 F.2d 978, 988 (8th Cir.1984). The deportation proceedings instituted by the Appellee were required by statute and "made only upon a record in a proceeding before a special inquiry officer, at which the alien shall have reasonable opportunity to be present, ..." 8 U.S.C. § 1252(b). The deportation proceedings fall squarely within the definition of an "adversary adjudication" defined under section 554 and are therefore covered by EAJA.

This construction of EAJA is consistent with the recommendations of the Administrative Conference of the United States (ACUS). In drafting model rules to be used by administrative agencies in implementing EAJA, ACUS stated that "considering the purposes of the Equal Access to Justice Act, questions of its coverage should turn on substance—the fact that a party has endured the burden and expense of a formal hearing—rather than technicalities." 46 Fed.Reg. 32,901 (1981). The position taken by the majority contradicts this language because the decision focuses on the technicality of "under section 554" instead of examining the substance of the deportation proceedings which clearly fall within the definition of an "adversary adjudication" contained within section 554.

The majority's opinion relies heavily on *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955). I disagree with the majority's application of *Marcello* to

this case. *Marcello* states, "[e]xemptions from the terms of the Administrative Procedure Act are *not lightly* to be *presumed....*" and then restricted its decision and departure to the procedure for deportation hearings. *Marcello*, 349 U.S. at 310, 75 S.Ct. at 726 (emphasis added). The court then stated, "the present statute *expressly supercedes the hearing provisions* of that Act." *Id.* (emphasis added). Nevertheless, the deportation proceedings are agency adjudications of the type defined under section 554. Therefore, the Supreme Court's decision in *Marcello* is not inconsistent with the Ninth Circuit's decision in *Escobar Ruiz*. *Escobar* addressed *Marcello*'s treatment of the issue of whether deportation proceedings were subject to the hearing provisions of the APA.

Finally, the recovery of attorney fees pursuant to EAJA is not in conflict with nor precluded by section 292 of the Immigration and Nationality Act.[2] Section 292 is designed to prevent the appointment of counsel for indigent aliens in the process of exclusion or deportation proceedings. *See generally, Perez–Perez v. Hanberry*, 781 F.2d 1477 (11th Cir.1986). This provision does not conflict with EAJA which only allows recovery by a prevailing party when the government's actions are without substantial justification. The legislative history of section 292 does not clearly demonstrate that the section was intended as a complete and total bar to the collection of fees in deportation proceedings. *See* H.R. Rep. No. 1365, 82nd Cong., 2d Sess. (1952), *reprinted in* 1952 U.S.Code Cong. & Admin.News 1653, 1712.

(D.C.Cir.1989). In *St. Louis Fuel & Supply Co.*, the court examined the language of section 504(b)(1)(C) and determined that the above quoted legislative history did not support the proposition that adversary adjudications not governed by the APA were subject to the provisions of EAJA. *St. Louis Fuel & Supply Co.*, 890 F.2d at 450. The court's rationale was that the version of the Act passed by the Senate contained the language "subject to" instead of "under" and that the House Judiciary Committee's Report indicated that "under" meant "subject to." *Id.* This conclusion ignores the plain language "defined under the Administrative Proce-

dure Act" contained in the legislative history of section 504(b)(1)(C).

2. Section 292 provides that:

[i]n any exclusion or deportation proceedings before· a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings. 8 U.S.C. § 1362

Where the legislative history is such, as here, that it can be persuasively construed to support two conflicting views between persons of good faith, it appears to me that the court should look to the broad purposes and intent of the statute to grant attorney fees and expenses rather than strangle the law's purpose by a hypercritical interpretation and application of the law.

For these reasons, I dissent from the majority's holding.