Thomas C. POLLGREEN, Floyd Roseman, and Abelardo Vazquez, Plaintiffs–Appellees,

v.

Raymond A. MORRIS, District Director of United States Immigration & Naturalization Service, Durward E. Powell, Regional Commissioner of United States Immigration & Naturalization Service, Douglas D. Angle, District Director of the United States Customs Service, Robert N. Battard, Regional Commissioner of the United States Customs Service, Defendants–Appellants.

No. 89–5767.

United States Court of Appeals, Eleventh Circuit.

Sept. 7, 1990.

---

Robert Kendall, Jr., Asst. Director, Office of Immigration Litigation, Michael Robinson, U.S. Dept. of Justice, Civil Div., Appellate Staff, Washington, D.C., for defendants-appellants.

Diane Tolbert Covan, New York City, for plaintiffs-appellees.

Before KRAVITCH and COX, Circuit Judges, and DYER, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The United States appeals the district court's award of Equal Access to Justice Act (EAJA) attorney's fees in a case involving plaintiffs' successful challenge to the imposition of fines and seizure of their fishing boats for transporting Cuban aliens seeking asylum to the United States. The government contends that the court should not have awarded attorney's fees for work performed during administrative hearings and should not have doubled the statutory hourly rate of $75. We agree with the government that the administrative hearings at issue did not constitute adversarial proceedings within the meaning of section 2412(d)(3) of the EAJA. Nevertheless, we affirm the district court's award of fees because they were warranted under section 2412(d)(1) of the EAJA as being incurred by a party in "any civil action." Because it is unclear to what extent, if any, the district court's doubling of the statutory hourly rate was premised on impermissible criteria, we remand the matter to the district court for further consideration and clarification.

## PROCEDURAL HISTORY

The facts of the underlying action are neither contested nor directly relevant to this fee dispute. An understanding of the interrelationship between the administrative proceedings and the civil actions in this case, however, is essential to determining whether attorney time expended in the administrative actions may be considered in a fee award under the EAJA. Additionally, an appreciation of the protracted nature of this extraordinary litigation [1] provides a useful perspective on the district court's

---

1. *See Pollgreen v. Morris,* 579 F.Supp. 711, 723 (S.D.Fla.1984), *vacated,* 770 F.2d 1536 (11th Cir. 1985). The complex factual scenario of this case is comprehensively delineated in three published opinions. *See Pollgreen v. Morris,* 770 F.2d 1536, 1538–43 (11th Cir.1985); *Pollgreen,* 579 F.Supp. at 712–22; *Pollgreen v. Morris,* 496 F.Supp. 1042, 1047–48, 1055 (S.D.Fla.1980); *see also Lyden v. Howerton,* 731 F.Supp. 1545, 1547–48 (S.D.Fla.1990) (discussing procedural history of virtually identical parallel litigation).

determination of the appropriate fee amount.

The case involved a well publicized effort by Key West fishermen in 1980 to transport Cuban refugees seeking political sanctuary to Florida. *Pollgreen*, 579 F.Supp. at 714. Many of the fishermen, including the plaintiffs in this case,[2] intended to transport only a limited number of specified persons, mostly relatives and friends, who they believed had valid visas for entry into the United States. *Id.* at 715. Due to several statements from President Carter and the vacillating positions of the executive branch, the plaintiffs reasonably believed that they were acting with the approval of the government. *Pollgreen*, 770 F.2d at 1538–40; *Pollgreen*, 579 F.Supp. at 717. Once the plaintiffs arrived at Cuba's Mariel Harbor, they were forced by armed soldiers of the Cuban government to take on board scores of other Cuban nationals whose entry into the United States was illegal. *Pollgreen*, 579 F.Supp. at 715–17. When the plaintiffs returned to the United States, the Customs Service and the Immigration and Naturalization Service (INS) seized their fishing boats and served each plaintiff with a Notice of Intention to Fine Under Immigration and Nationality Act. *Pollgreen*, 496 F.Supp. at 1048.

On June 4, 1980, plaintiffs demanded either the return of their vessels or that they be permitted to avail themselves of administrative mechanisms providing for the expeditious return of improperly seized vessels. *Id.* at 1048. The government denied both requests, asserting that the defendants were only entitled to challenge the fines under 8 C.F.R. § 280. *Id.* at 1048. The plaintiffs responded by bringing an action in federal court against the appropriate representatives of the INS and the Customs Service, seeking both a declaration that the vessel seizures were unlawful and an injunction enjoining the defendants from seizing the boats or levying fines. *Id.* at 1048. On June 25, 1980, as modified on July 7, 1980, the district court found that the defendants' refusal to provide plaintiffs

with a prompt post-seizure hearing on the propriety of the boat seizures was an unconstitutional deprivation of due process. *Id.* at 1052–54. Additionally, the court found that the plaintiffs were likely to prevail, with a defense of duress, on their challenge to the seizure of the boats. *Id.* at 1054–55. The court, therefore, issued a preliminary injunction that permitted the boats to be used for fishing operations. *Id.* at 1057–58.

The plaintiffs then pursued administrative remedies before the District Director of the INS. The Director imposed a total of nearly five million dollars in fines on the fishermen. *See* 770 F.2d at 1541 n. 13. A substantial majority of these fines were affirmed by the Board of Immigration Appeals (BIA). *Id.* at 1542. Both the Director and the BIA refused to recognize duress as a defense to the imposition of the fines, asserting that the fishermen's intent was irrelevant to their liability. *Id.* at 1542–43.

Returning to federal court, the plaintiffs challenged the imposition of the fines and sought to permanently enjoin the government from seizing their vessels. *Pollgreen*, 579 F.Supp. at 712. The court granted the vessel owners' motion for summary judgment and issued a permanent injunction returning the boats to the owners free of all claims by the government. *Id.* at 723–24. The court determined that the owners had conclusively established the defense of duress and that the failure of the INS to consider the defense was "arbitrary, capricious and constituted an abuse of discretion." *Id.* at 718, 722–23. The district court, therefore, found that the fines were imposed unlawfully. *Id.* at 724.

The Eleventh Circuit affirmed the court's holding that the duress defense was applicable, but vacated the court's review of the actual merits. *Pollgreen*, 770 F.2d at 1544. We directed the district court to remand the cases to the INS for "rehearing, reconsideration, and redetermination" of the plaintiffs liability in light of the duress defense. *Id.* at 1546. Noting that the

---

**2.** The original plaintiffs in this case were nineteen owners, managing agents, representatives, or captains of thirty-one commercial fishing vessels from the Key West, Florida vicinity.

cases were by that point over five years old, we exercised our supervisory power to direct that the agency proceedings be "held without delay and expedited." *Id.* at 1546 (footnote omitted). To accomplish this end, we instructed the agency to devise a system

> so that (i) a composite hearing with respect to common issues can be held while allowing (ii) facts peculiar to each vessel owner to be independently ascertained and determined with (iii) a single appeal with appropriate subparts to this Court.

*Id.* at 1546.

On February 13, 1986, the district court entered an order remanding the proceedings to the INS and directing that they be conducted in accordance with the Eleventh Circuit's instructions. In a separate order, the court reserved ruling on a motion for attorney's fees because such an award would be premature until the administrative proceedings had been completed. Subsequently, on February 1, 1988, the INS vacated its prior decisions pertaining to the plaintiffs who had sought redetermination and ruled that no fines should be imposed.

**3.** The plaintiffs' summary of the hours spent in the litigation is undisputed by the government and allocates the attorney hours as follows:

1. Efforts to resolve matter prior to filing action in District Court and prior to beginning of administrative process. May 21, 1980 through June 10, 1980 — 109.5 hours

2. District Court, from filing of action through preliminary injunction, release of vessels, and completion of related matters. June 11, 1980 through August 27, 1980 — 132.5 hours

3. First Administrative process ending with decision of Board of Immigration Appeals. August 29, 1980 through December 20, 1982 — 104.3 hours

4. District Court, from release of vessels/injunction to Summary Judgment. August 29, 1980 through January 24, 1984 — 288.3 hours

On July 12, 1988, plaintiffs filed a re-amended motion for attorney's fees under the EAJA. Following an evidentiary hearing, the court granted the plaintiffs' motion and awarded their attorney, Diane Tolbert Covan, $181,080 in fees. The court found that Covan had spent 1207.2 hours on this litigation from May 21, 1980, through February 26, 1988. In this calculation, the court included time spent litigating the case before the district court, the INS, and the Eleventh Circuit.[3] The court also found that "exceptional and unusual" circumstances existed to warrant the doubling of the statutory $75 hourly fee to $150 an hour. In this appeal the government contests both the amount of hours eligible for billing under the Act and the doubling of the statutory hourly fee.

## FEES FOR INS ADMINISTRATIVE PROCEEDINGS

The EAJA provides that:

> a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... in-

5. District Court, miscellaneous matters including motions for judgment and attorney's fees. January 30, 1984 through July 11, 1988 — 114.4 hours

6. Eleventh Circuit Court of Appeals. July 30, 1984 through September 6, 1987 — 187.9 hours

7. Second Administrative process ending with District Director's decision to vacate fines. February 27, 1986 through February 26, 1988 — 270.3 hours

TOTAL HOURS — 1207.2 hours

Brief for Appellees at 15. The district court found that plaintiffs presented "well documented time sheets and other evidence" in support of the above figures and that the total hours expended were "extremely reasonable" given the complexity and duration of the litigation. *Pollgreen*, No. 80–1412–CIV–ARONOVITZ, slip op. at 14–15 (S.D.Fla. May 25, 1989). We perceive no basis for disturbing the district court's finding that these figures were a reasonable and accurate reflection of the attorney time spent in each segment of this litigation.

cluding proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Additionally, the EAJA authorizes fee awards for litigation before an agency that conducts adversary adjudications unless the position of the United States was substantially justified or special circumstances make a fee award unjust. 28 U.S.C. § 2412(d)(3); *Sullivan v. Hudson,* — U.S. —, —, 109 S.Ct. 2248, 2257–58, 104 L.Ed.2d 941 (1989); *see* 5 U.S.C. § 504(a) & (b)(1)(C).

■ A party seeking an award for fees incurred in either a civil action or an adversary agency adjudication is entitled to fees provided that 1) it is the prevailing party; 2) its application for fees is timely; 3) the position of the government was not substantially justified; and 4) no special circumstances make an award unjust. *Canady v. Sullivan,* 893 F.2d 1241, 1243 (11th Cir.1990) (per curiam); *see Hudson,* — U.S. at —, 109 S.Ct. at 2253, 2255; *Jean v. Nelson,* 863 F.2d 759, 765 (11th Cir.1988), *aff'd,* — U.S. —, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). The district court found that the plaintiffs satisfied each of these prerequisites and were, therefore, entitled to a fee award. The government does not challenge any of these findings or the plaintiffs' entitlement to an award. Instead, the government contends that the court erred in awarding plaintiffs fees for the administrative proceedings at issue because they were not "adversarial adjudications" within the meaning of the EAJA. The district court's decision to award fees for the agency proceedings in this case is reviewed for abuse of discretion. *Hudson,* — U.S. at —, 109 S.Ct. at 2257; *see Pierce v. Underwood,* 487 U.S. 552, 563–64, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988).

### A. Adversary Adjudications

The EAJA expressly provides that a court awarding fees for judicial review proceedings of an "adversary adjudication" may also award fees for the attorney time expended in the adversary adjudication itself to the extent authorized in 5 U.S.C. § 504(a). 28 U.S.C. § 2412(d)(3); *Hudson,* — U.S. at —, 109 S.Ct. at 2257; *St. Louis Fuel and Supply Co. v. Federal Energy Regulatory Commission,* 890 F.2d 446, 448 (D.C.Cir.1989). In order for an administrative proceeding to qualify for a fee award under section 2412(d)(3) of the EAJA, the proceeding must constitute an "adversary adjudication" as defined in 5 U.S.C. § 504(b)(1)(C). 28 U.S.C. § 2412(d)(3); *Hudson,* — U.S. at —, 109 S.Ct. at 2257; *St. Louis Fuel and Supply Co.,* 890 F.2d at 448. Section 504(b)(1)(C) of Title 5 describes an "adversary adjudication" as one "under section 554 of this title in which the position of the United States is represented by counsel or otherwise." 5 U.S.C. § 504(b)(1)(C); *see Hudson,* — U.S. at —, 109 S.Ct. at 2257; *St. Louis Fuel and Supply Co.,* 890 F.2d at 448.

Here, plaintiffs seek attorney's fees for two separate series of proceedings before the INS. The first administrative proceedings, which ensued after the district court ruled that the failure to provide prompt post-deprivation hearings violated due process, occurred from August 1980 through the beginning of 1982. The second administrative proceedings, from February 1986 to February 1988, took place on remand and under the conditions imposed by the federal courts after the Eleventh Circuit upheld the district court's ruling that the INS improperly refused to consider plaintiffs' defense of duress.

■ The first administrative proceedings do not qualify for EAJA fees as adversary adjudications under the plain language of section 2412(d)(3) because the position of the United States was not "represented by counsel or otherwise." *See* 28 U.S.C. § 2412(d)(3); *Hudson,* — U.S. at —, 109 S.Ct. at 2257. It is undisputed that the United States was not represented by "counsel" in these proceedings. Plaintiffs, however, suggest that the position of the United States was "otherwise" represented

because the INS official who conducted the personal appearance interview that initiated the administrative process [4] acted as a criminal investigator.[5]

The plaintiffs' expansive reading of the term "otherwise," to include the immigration officer [6] conducting the interview or hearing, is not supported by a fair reading of the act. The word "otherwise" is more appropriately read in the context of the entire clause to refer to an individual who represents the position of the United States in a manner similar to that of counsel. The crucial distinction between the role of counsel and that of an adjudicator is that the former advocates a particular position while the latter independently assesses the evidence before it to reach a result that is dictated by its understanding of the law. The INS official who conducted the plaintiffs' personal appearance interview was not an advocate for the United States. Rather, his statutory role was to consider the evidence presented opposing the imposition of the fine and "prepare a report summarizing the evidence and containing his findings and recommendation." 8 C.F.R. § 280.13. As the First Circuit has cogently noted, "[t]he bare fact that an agency acting in an adjudicatory capacity rules against a private party, unjustifiably, is insufficient, absent the sovereign's ad-

versary participation, to support a fee award under section 504['s definition of "adversary adjudication"]." *In re Perry,* 882 F.2d 534, 540 (1st Cir.1989).

█ Until recently, the government's liability for attorney's fees for the second administrative proceedings under the "adversary adjudication" prong of the EAJA was a far closer question. The government concedes that it was represented by counsel during these proceedings. Nevertheless, the government maintains that the INS fine imposition proceedings were not adversary adjudications within the meaning of the act because they were not adjudications "under section 554 of ... title [5]." 5 U.S.C. § 504(b)(1)(C).[7]

The Courts of Appeals have split on the appropriate construction of the statutory term "under section 554." *Compare Escobar Ruiz v. I.N.S.,* 838 F.2d 1020, 1023 (9th Cir.1988) (en banc) (EAJA provides fees for adversary proceedings that have all essential characteristics of proceedings governed by section 554) *with Clarke v. I.N.S.,* 904 F.2d 172, 178 (3rd Cir.1990) (EAJA applies only to adversary proceedings that are actually governed by section 554); *St. Louis Fuel and Supply Co.,* 890 F.2d at 449–51 (same); *Owens v. Brock,* 860 F.2d 1363, 1366–67 (6th Cir.1988) (same). Recently, a panel of the Eleventh Circuit, over a vigor-

---

**4.** Federal regulations permit an individual who has been served with a Notice of Intention to Fine to request a personal appearance before an INS officer in order to present a defense to the allegations in the notice. 8 C.F.R. § 280.12, § 280.13. This officer is required to prepare a report summarizing the evidence and containing his findings and recommendation. 8 C.F.R. § 280.13. Subsequently, another INS official, generally the District Director, reviews the record and either approves or disapproves the officer's recommendation. 8 C.F.R. § 280.13. The Director's decision may be appealed to the Board of Immigration Appeals. 8 C.F.R. § 280.13. The parties do not dispute that at each step of the first administrative proceedings, no United States official participated other than the adjudicatory officer himself.

**5.** Plaintiffs' assertion that Demetrios Georgakopoulos, the INS official conducting the personal appearance interview, served as a criminal investigator is based on the following introductory statement which he used to initiate the interview:

This is a record of the personal appearance made in the proceedings under Section 273, Immigration and Nationality Act, in the [following] cases.... My name is Demetrios Georgakopoulos, and I am criminal investigator for the New York District Office of Immigration Service.... [T]his is a personal appearance that is accorded to you and your clients to present testimony in addition to what you have already presented on file and made a part of the record.... This is not a hearing, and I am going to ask you questions only when I feel it necessary.

**6.** The federal regulations relating to INS proceedings designate "[a]ny" immigration "investigator, special agent, [or] investigative assistant" as an "immigration officer authorized to exercise the powers and duties of such officer as specified by the Act...." 8 C.F.R. § 103.1(q).

**7.** As discussed supra, fee awards under this section of the EAJA are limited to "adversary adjudication[s]" as defined in 5 U.S.C. § 504(b)(1)(C). *See* 28 U.S.C. § 2412(d)(3).

ous dissent, adopted the majority position, limiting EAJA awards in the "adversary adjudication" context to those proceedings " 'governed by' or 'subject to' section 554." *Ardestani v. United States Dept. of Justice, I.N.S.,* 904 F.2d 1505, 1510–13 (11th Cir.1990). This panel is bound by the decisions of prior panels of the Eleventh Circuit unless overruled by the *en banc* court or the Supreme Court. *Garay v. Carnival Cruise Line,* 904 F.2d 1527, 1534 n. 10 (11th Cir.1990); *United States v. Machado,* 804 F.2d 1537, 1543 (11th Cir.1986). The law is clear that INS adjudicatory proceedings are not governed by section 554 of the Administrative Procedure Act. *Marcello v. Bonds,* 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955); *Ardestani,* 904 F.2d at 1511; *Clarke,* 904 F.2d at 174; *Escobar Ruiz,* 838 F.2d at 1023, 1025. Therefore, such proceedings cannot be considered adversary adjudications for EAJA purposes under the law of this circuit even if the government's position was represented by counsel. *Ardestani,* 904 F.2d at 1512–13.

## B. Civil Action

■ The EAJA also provides for a court to award attorney's fees to the prevailing party in a civil action. 28 U.S.C. § 2412(d)(1)(A); *see Hudson,* — U.S. at ——, 109 S.Ct. at 2253; *In re Davis,* 899 F.2d 1136, 1138 (11th Cir.1990). The Supreme Court has construed this provision to permit EAJA fee awards for administrative proceedings that are "so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award." *Hudson,* — U.S. at ——, 109 S.Ct. at 2257. Under the civil action prong of the EAJA, the adversarial nature of the proceedings is irrelevant. *Id.* at ——, 109 S.Ct. at 2258. Rather, the

crucial issue is the nexus between the civil action and the administrative proceedings.[8]

Our review of this issue is controlled by the Supreme Court's recent decision in *Sullivan v. Hudson,* — U.S. ——, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). In *Hudson* the Court held "that where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded." *Id.* 109 S.Ct. at 2255; *see Jean,* — U.S. at ——, 110 S.Ct. at 2321. In considering whether a particular administrative proceeding is eligible for EAJA fees, the focus of the inquiry is on the interaction between the judicial action and the agency proceedings. *Hudson,* — U.S. at ——, 109 S.Ct. at 2254.

In *Hudson,* the Supreme Court relied primarily on two factors in evaluating the relationship of the judicial and administrative proceedings. First, the Court considered whether a plaintiff would not "attain 'prevailing party' status within the meaning of § 2412(d)(1)(A) until after the result of the administrative proceedings is known." *Hudson,* — U.S. at ——, 109 S.Ct. at 2255. The Court, in permitting EAJA fee awards for Social Security administrative proceedings noted that "[n]o fee award at all would have been available ... absent successful conclusion of the remand proceedings, and the services of an attorney may be necessary both to ensure compliance with the district court's order in the administrative proceedings themselves, and to prepare for any further proceedings before the district court to verify such compliance." *Id.* at ——, 109 S.Ct. at 2256. Second, the Court considered whether there would be a final judgment in the plaintiff's

---

**8.** As a preliminary matter, we note that the Eleventh Circuit's determination in *Ardestani,* 904 F.2d at 1513, that the EAJA is inapplicable to INS administrative proceedings, is irrelevant to our analysis in this section of the opinion. *Ardestani* involves the question, discussed in the first section of our opinion, of whether *INS administrative proceedings themselves* are eligible for attorney's fees as "adversary adjudication[s]" under the EAJA. *Id.* at 1509–10. *Ardes-*

*tani* does not address the question we discuss in this section of whether some INS proceedings are sufficiently linked with the resolution of the civil action to be included in an EAJA fee award for the *civil action* under *Sullivan v. Hudson.* *Cf. Perry,* 882 F.2d at 541 n. 4 (decision that EAJA is inapplicable to OSHA Review Commission proceedings does not involve *Hudson* allegation that such proceedings are an integral part of a civil action).

civil action before the completion of the administrative proceedings. *Id.* at ——, 109 S.Ct. at 2255. Determining that a Social Security claimant's status as a prevailing party and the final judgment in her civil action "are often completely dependent on the successful completion" of the Social Security benefit proceedings, the Court held that such administrative proceedings are encompassed by the EAJA's provision for civil actions. *Id.* at ——, 109 S.Ct. at 2255.

■ The interrelationship between the administrative and judicial actions in this case is closely analogous to that of the proceedings in *Hudson.* In a typical case, attorney time consumed by the initial administrative proceedings could not be considered in an EAJA fee award because the proceedings occurred prior to the judicial action and, therefore, do not have the requisite ancillary relationship with the judicial action. *See id.* at ——, 109 S.Ct. 2257–58 (awarding EAJA fees for administrative proceedings occurring after remand from federal court). The first administrative proceedings in this case, however, are far from typical. Because plaintiffs were denied the opportunity for an appropriate post-deprivation hearing at the administrative level, they were forced to seek their initial relief from federal court. Only *after* the plaintiffs sought recourse in federal district court were they able to pursue meaningfully their administrative remedies. The interrelationship between the civil and administrative proceedings in this case is evident from the district court's description of its factual findings as "preliminary" and from its statement that neither the administrative tribunals nor itself upon a subsequent trial on the merits should feel bound by the findings. *Pollgreen,* 496 F.2d at 1055 n. 20. This statement reveals that the district court contemplated that a full set of administrative hearings would follow its decision and that it would have the opportunity to revisit its own preliminary factual findings in a later phase of the civil action. As the subsequent procedural history of this case indicates, this is precisely what transpired.

A related and equally significant factor is that the federal court continued to hold jurisdiction in the civil action pending the outcome of the first administrative proceedings. In fact, the court put aside a review of plaintiffs' fines with the expectation that it would examine the issue after plaintiffs had exhausted their administrative remedies. *Id.* at 1055 n. 21. Plaintiffs' initial relief in federal court, a preliminary injunction, did not become a permanent injunction until after plaintiffs had been denied relief in the first administrative proceedings. Likewise, plaintiffs did not receive a final judgment in their federal action until after the completion of the first administrative proceedings.[9]

■ Similarly, if not to an even greater extent, the second administrative proceedings were intimately intertwined with the judicial proceedings to a sufficient extent necessary to be eligible for fees under the EAJA. The proceedings commenced only after a remand from federal district court. As in *Hudson,* the remand order contained "instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed." —— U.S. at ——, 109 S.Ct. at 2254. Additionally, the remand order further linked the administrative proceedings with the judicial action by dictating the format of the administrative proceedings and the nature of the appeal to be taken to the Eleventh Circuit. As in *Hudson,* the district court's determination that the plaintiffs were prevailing parties was wholly dependent on the outcome of the administrative proceedings. Indeed, on February 13, 1986, the district court issued an order deferring its ruling on attorney's fees because the matter was "premature." *Pollgreen,* No. 80–1412–CIV–ARONOVITZ (S.D.Fla. Feb. 13, 1986). The district court retained jurisdiction over the attorney's fee

9. Our conclusion that the first administrative proceedings were interwoven with the civil litigation for EAJA purposes is reinforced by the Supreme Court's view that "the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *I.N.S. v. Jean,* —— U.S. ——, ——, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134 (1990).

issue and did not issue a final judgment on the matter until after the completion of the administrative proceedings. *See Hudson,* — U.S. at ——, 109 S.Ct. at 2255 (no final judgment under EAJA in Health and Human Services Social Security benefits litigation until completion of administrative proceedings); *Martindale v. Sullivan,* 890 F.2d 410, 411–12 (11th Cir.1989) (per curiam) (no final judgment under EAJA in Health and Human Services disability benefits litigation until completion of administrative proceedings); *Taylor v. Heckler,* 778 F.2d 674, 677–78 (11th Cir.1985) (same).[10]

We agree with plaintiffs that because the administrative proceedings at issue were "intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded." *Hudson,* — U.S. at ——, 109 S.Ct. at 2255. It was, therefore, "within the court's discretion to conclude that representation on remand was necessary to the effectuation of its mandate and to the ultimate vindication of the claimant's rights, and that an award of fees for work performed in the administrative proceedings is … proper." *Id.* at ——, 109 S.Ct. at 2257.

■ Our confidence in the propriety of the district court's award of EAJA fees for the administrative proceedings in this litigation does not extend to the court's inclu-

sion in the award of the 109.5 attorney hours spent prior to the filing of the action in federal court and prior to the beginning of the administrative process.[11] Unless there was a pending or prior action in federal court relating to the administrative proceedings, we can conceive of no way in which those proceedings could be construed as being intertwined with the (as yet nonexistent) civil action for purposes of an EAJA fee award. Therefore, to the extent that the 109.5 attorney hours in this period reflect efforts to resolve the matter in the administrative proceedings, their inclusion in the EAJA fee award constitutes an abuse of discretion. It is certainly possible, however, that some (or even most)[12] of these attorney hours were linked to the preparation of the civil action in federal court. To the extent that such hours can be attributed to the civil action, they are permissible under the EAJA. Because the allocation of these hours is unclear from the record, we must vacate this portion of the fee award and remand for the purpose of determining which of these 109.5 hours are related to civil action and can, therefore, be included in the EAJA award.[13]

### HOURLY RATE FOR EAJA FEES

■ The EAJA mandates that: attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the

10. The government struggles to distinguish *Hudson* from the facts of this case by focusing on differences between the Immigration and Nationality Act and the Social Security Act. The test espoused by the Supreme Court, however, is not how similar the statute governing a particular administrative proceeding is to the Social Security Act, but rather, whether the administrative proceedings are "intimately tied to the resolution of the judicial action." *Hudson,* —— U.S. at ——, 109 S.Ct. at 2255. We have no trouble concluding that the administrative proceedings in this case were intertwined with the judicial action to the extent contemplated by the Supreme Court in *Hudson,* and that the intent of Congress in promulgating the EAJA is furthered by an award of fees.

11. *See* Appellees' Time Summary, *supra* note 3.

12. Our cursory review of attorney Covan's time sheets for this period indicates that substantial portions of her time were indeed spent researching and preparing the federal pleadings. We note, however, that such items as the time spent drafting a letter to President Carter and the "Preparation of INS Defenses, Requests for Interview and Appearances re clients" should probably not be included in the EAJA award because they appear to be unrelated to the preparation of the civil action in federal court.

13. We also note that the plaintiffs are entitled to attorney's fees for this appeal, and instruct the district court on remand to include such a sum in its final fee award. *Jean,* 110 S.Ct. at 2323; *Canady,* 893 F.2d at 1243–44; *Hudson v. Secretary of Health and Human Services,* 839 F.2d 1453, 1458 n. 7 (11th Cir.1988), *aff'd,* —— U.S. ——, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).

limited availability of qualified attorneys for the proceedings involved justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii); *Pierce,* 487 U.S. at 571, 108 S.Ct. at 2253. The district court doubled the statutory fee to $150.00, finding that "the [litigation's] benefit derived not only for the Plaintiffs herein but a class of people, including over 1,000 vessel owners." *Pollgreen,* No. 80–1412–CIV–ARONOVITZ, slip op. at 14. Additionally, the court found that "the exceptional and unusual circumstances present here fit clearly within the flexibility allowed by the statute ... to exceed the statutory base." *Id.* The court elaborated that "the exceptional and unusual circumstances of this case includes [sic] the extreme delay by the government in proceeding with and finally disposing of this suit." *Id.* at 14 n. 11. In the alternative, the court suggested that an increase in the hourly fee was necessary to take into account the cost of living or the "time value of money and the effects of inflation." *Id.* The propriety of the district court's increase of the statutory hourly fee is reviewed for abuse of discretion. *See Pierce,* 487 U.S. at 571, 108 S.Ct. at 2553.

In *Pierce v. Underwood,* the Supreme Court adopted a narrow construction of the "special factor[s]" that would warrant a departure from the $75 statutory hourly rate. The Court noted that the factors "envisioned by the exception must be such as are not of broad and general application." *Id.* at 572–73, 108 S.Ct. at 2554. Although the Court refused to enumerate what special factors were appropriate, it rejected the lower court's reliance on the " 'novelty and difficulty of issues,' 'the undesirability of the case,' 'the work and ability of counsel,' ... 'the results obtained' ... [and] 'the contingent nature of the fee.' " *Id.* at 572–73, 108 S.Ct. at 2554.

Subsequently, in *Jean v. Nelson,* the Eleventh Circuit construed *Pierce* to preclude a consideration of factors such as the motivations of the attorneys in bringing the case, the pro bono nature of the case, the fact that the litigation served to "vindicate public rights," and the hardships experienced by counsel in departing from the statutory hourly rate. 863 F.2d at 775–76. *Jean,* however, suggested that a "special factor" rate adjustment might be appropriate for attorneys who have a special expertise in immigration law or are fluent in foreign languages relevant to the litigation. *Id.* at 774; *see Pierce,* 487 U.S. at 572–73, 108 S.Ct. at 2254 (noting that "practice specialty such as patent law, or knowledge of foreign law or language" could constitute a special factor). Likewise, *Jean* held that "if the government ... advanced litigation for any improper purpose such as harassment, unnecessary delay or increase in the plaintiffs' expense, then consistent with *Pierce,* its action warrants the imposition of a special factor." 863 F.2d at 776 n. 13. The court further elaborated that "the government's unusually litigious position" might constitute a special factor, and encouraged lower court's to "be free to ... consider [other] potential special factors that would be consistent with *Pierce* and [*Jean* ]." *Id.* at 776.

Our review of *Pierce* and *Jean* compels the conclusion that at least one of the factors considered by the district court in doubling the statutory fee was not a valid special factor. The court's consideration of the litigation's benefit to a broad class of people is foreclosed by *Pierce*'s prohibition on considering "the results obtained" and *Jean*'s rejection of the fact that the litigation may have served to "vindicate public rights." *See Pierce,* 487 U.S. at 572–73, 108 S.Ct. at 2554; *Jean,* 863 F.2d at 775. It is also not clear whether the district court's description of the government's "extreme delay" in proceeding with the case as an "exceptional and unusual circumstance[ ]" was meant to suggest that the reason for the delay was improper or that the delay resulted because the underlying position litigated was unjustified. The government's delay in litigating a case is a permissible special factor only when the motivation for the delay was improper or the length of the delay itself was inappropriate. *Cf. Wilkett v. I.C.C.,* 844 F.2d 867, 876–77 (D.C.Cir.1988) (unusual delay in awarding fees, not attributable to plaintiff, may constitute special factor warranting

rate increase). A delay that occurred because the government litigated a position that lacked substantial justification is not a permissible special factor because any litigation eligible for EAJA fees, by definition, involves the government's pursuit of an unjustified position.[14] If the government's litigation delay was the result of bad faith or the length of the delay was excessive, regardless of the merits of the position litigated, then such delay could constitute a special factor.[15]

The court's consideration of the increase in the cost of living was a permissible basis to raise the statutory fee rate.[16] The court erred, however, in failing "to specify in dollar amounts the impact of this factor in reaching its overall award." *Jean*, 863 F.2d at 773. As in *Jean*, the district court on remand "should describe mathematically the basis of all cost of living adjustments." *Id.* at 773. In undertaking this calculation, we note that the Eleventh Circuit does not bar cost of living adjustments for services rendered prior to 1985. *See id.* at 774; *see, e.g., Dabone v. Thornburgh*, 734 F.Supp. 195, 204 (E.D.Pa.1990) (calculating cost of living adjustment to yield adjusted hourly rate of $102.22); *Petition of Duggan*, 734 F.Supp. 705, 708 & n. 1 (D.S.C.1990) (calculating cost of living adjustment to yield adjusted hourly rate of $134.36). Additionally, the district court on remand is free to consider any other circumstances, including the potential expertise of attorney Covan in immigration matters,[17] in reevaluating the appropriate hourly rate. *See Jean*, 863 F.2d at 774. Until the district court clarifies its justification for exceeding the statutory rate, we are unable to determine whether the court abused its discretion in assessing a rate of $150.

## CONCLUSION

The district court's award of EAJA fees for the administrative proceedings in this case is affirmed because they were intimately tied with the ancillary civil action in federal court. We vacate that portion of the award accounting for attorney time spent prior to the initiation of the federal action. On remand, the district court is directed to determine what portion of those hours qualifies for EAJA fees under the reasoning set forth in this opinion. Additionally, the district court on remand is instructed to award appropriate EAJA fees to the plaintiffs for the time incurred in this appeal. Finally, because it is unclear to what extent the impermissible consideration of the litigation's benefit contributed to the doubling of the EAJA fee base, and because the remaining grounds for the court's increase of the fee require further clarification, the district court's determination of the hourly rate is vacated and remanded for additional consideration and, if necessary, recalculation.

AFFIRMED in part, VACATED and REMANDED in part.

---

**14.** *See Hudson*, ⸺ U.S. at ⸺, 109 S.Ct. at 2255 (prerequisite for award of EAJA fees is government position that was not substantially justified) (same); *Canady*, 893 F.2d at 1243; 28 U.S.C. § 2412(d)(1)(A) (same).

**15.** The "time value of money" factor referred to by the court is only an appropriate consideration in the context of an improper delay by the government in conducting the litigation. An improper delay can reasonably justify an increased EAJA award because, but for the delay, the plaintiffs would have received their fee award sooner and been able receive increased value from their money through investments.

**16.** Because the cost of living factor subsumes fluctuations in the rate of inflation, the district court on remand should not consider inflation as a separate factor.

**17.** We note that attorney Diane Tolbert Covan has been qualified as an expert in immigration law by at least one federal district court. *See Lyden*, 731 F.Supp. at 1555.