FULL GOSPEL PORTLAND
CHURCH, et al.

v.

Richard THORNBURGH, et
al., Appellants.

No. 90–5061.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 19, 1990.

Decided March 12, 1991.

William Kanter, Attorney, Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Michael Jay Singer and John S. Koppel, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellants.

James H. Lesar, with whom Susan Au Allen and Paul Shearman Allen, Washington, D.C., were on the brief, for appellees.

Before RUTH BADER GINSBURG, SILBERMAN, and SENTELLE, Circuit Judges.

Opinion for the Court filed PER CURIAM.

Opinion concurring in principal part, but dissenting as to fees for INS processing following the district court's decision, filed by Circuit Judge RUTH BADER GINSBURG.

PER CURIAM:

This appeal concerns an application for attorney fees, expenses, and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Plaintiffs-appellees Full Gospel Portland Church and Hae–Sook Kim (collectively, "Full Gospel"), through proceedings in the district court, gained an injunction preventing deportation of Kim and established her eligibility to remain in this country. After entering judgment in favor of Full Gospel on the merits, the district court granted Full Gospel's application for fees covering both administrative and court proceedings. The government on appeal contests the fees award to the extent that it compensates counsel for administrative proceedings before the Immigration and Naturalization Service ("INS") (119 hours). We hold that Full Gospel may not recover fees for the administrative proceedings.

I.

Hae–Sook Kim worked as a choir director, piano teacher, and accompanist at Full Gospel Portland Church. In late 1986 and early 1987, INS revoked Kim's "third preference" immigration status, withdrew her authorization to work, and ordered her to leave the country or face deportation proceedings. Full Gospel, represented by its Washington, D.C. counsel, Susan Au Allen, moved INS to reconsider its decision and filed a "sixth preference" petition with the Service.[1] INS nonetheless commenced

---

1. The Immigration and Nationality Act of 1952 authorizes "third preference" status for (inter alia) "qualified immigrants who are members of the professions ... and whose services in the

deportation proceedings in November 1987. In the ensuing weeks, Full Gospel repeatedly requested a response from INS to its motion and petition. At the end of February 1988, when it became apparent that Full Gospel would receive no INS response prior to the time set for Kim's deportation hearing, Full Gospel commenced its litigation in the district court.

The court entered summary judgment for Full Gospel, ruling that the revocation of Kim's third preference petition and a denial of her sixth preference petition were arbitrary and capricious. The court ordered INS to abide by the court's determinations of Kim's qualification for third and sixth preference visas "in any matter relating to adjustment of Ms. Kim's status." Memorandum and Order, *Full Gospel Portland Church v. Thornburgh,* 730 F.Supp. 441, 450 (D.D.C. Oct. 17, 1988) ("Merits Op."). Full Gospel promptly moved for attorney fees under EAJA, both for the district court litigation and for all INS proceedings. *See* 28 U.S.C. §§ 2412(d)(1)(A) (called, in this opinion, "civil action EAJA") and 2412(d)(3) (herein called "judicial review EAJA").

In May 1989, after further efforts by Full Gospel's attorney, INS approved Kim's application for adjustment of status and gave her permission to work. In October 1989, upon determining that the government's decision to deport was not "substantially justified," the district court awarded Full Gospel fees for both the litigation and the administrative proceedings. Memorandum and Order, *Full Gospel Portland Church v. Thornburgh,* 730 F.Supp. 441, (D.D.C. Oct. 4, 1989) ("Fees Op.").

The government appeals the fees covering the pre- and post-litigation administrative proceedings ($12,334.79). In considering whether a fee award for the administrative proceedings is proper we distinguish between the pre-litigation visa proceedings and the deportation hearing (106 hours), and the post-litigation efforts to adjust Kim's status to that of a permanent resident (13 hours). We conclude, however, that neither judicial review EAJA nor civil action EAJA entitles Full Gospel to any fees in either the pre- or post-litigation proceedings.

II.

█ The district court awarded fees for the pre-litigation visa proceedings, and for the deportation hearing, under judicial review EAJA. Section 2412(d)(3) instructs the court to award fees against the government "to a prevailing party in any action for judicial review of *an adversary adjudication, as defined in [5 U.S.C. § 504(b)(1)(C)].*" (Emphasis added.) Full Gospel is not entitled to fees under judicial review EAJA. Our decision in *St. Louis Fuel and Supply Co. v. FERC,* 890 F.2d 446 (D.C.Cir.1989)—issued about six weeks after the district court's fees opinion—interpreted strictly section 504(b)(1)(C)'s stipulation that fees may be recovered only if the challenged administrative action constituted "an adjudication *under [5 U.S.C.] section 554.*" The words "under section 554," we held, mean *"governed by* APA section 554," 890 F.2d at 451 (emphasis added), and thus fees are not available in "adjudications that Congress did not subject to [APA section 554]." *Id.*[2] The Supreme Court has held that Congress specifically exempted INS proceedings from the APA's hearing provisions (including section 554). *See Marcello v. Bonds,* 349 U.S. 302, 310, 75 S.Ct. 757, 761, 99 L.Ed. 1107 (1955). Accordingly, fees may not be awarded for representation in deportation proceedings before the agency or on judicial review if the underlying action is governed by the procedural requirements of the Immigra-

---

professions ... are sought by an employer in the United States." 8 U.S.C. § 1153(a)(3). Sixth preference status extends "to qualified immigrants who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States." 8 U.S.C. § 1153(a)(6).

**2.** The fees requested in *St. Louis Fuel* were for the administrative proceedings before the agency, not for the judicial review of the agency action, but the barrier "under section 554" applies equally to both proceedings.

tion and Nationality Act ("INA"). *Accord. Ardestani v. United States Dep't of Justice, INS,* 904 F.2d 1505, 1509–13 (11th Cir.1990), cert. granted, — U.S. —, 111 S.Ct. 1101, 113 L.Ed.2d 212 (1991); *Clarke v. INS,* 904 F.2d 172, 174–78 (3d Cir.1990).

### III.

■ Full Gospel contends, alternatively, that, even if the government is right about judicial review EAJA, Full Gospel remains eligible for fees for the administrative proceedings under civil action EAJA which contains no "adversary adjudication" limitation. Except as otherwise specifically provided by statute, this provision authorizes a fee award to a party prevailing against the United States "in any civil action (other than cases sounding in tort), . . . in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

It seems rather obvious that Full Gospel's claim, if accepted, would nullify the limitations Congress placed on fee awards for administrative proceedings. These proceedings were "part of" the subsequent civil action only in the sense that they were reviewed by the district court at one point—but just as much (or as little) could be said of *any* judicially-reviewed agency action. On Full Gospel's theory, prevailing parties in any civil action reviewing an administrative matter in which the government's position was not substantially justified would be entitled to fees for the administrative proceeding, whether or not the proceeding qualified as an "adversary adjudication." This interpretation of civil action EAJA would thus override 28 U.S.C. § 2412(d)(3), the judicial review EAJA provision allowing fees only for *adversary* agency adjudications to parties who eventually prevail in court. We have no reason to believe that Congress intended such a result.

■ Finally, Full Gospel asserts that even if the prelitigation fees for administrative proceedings cannot be recovered, the post-litigation expenses fall into a different category and are authorized under *Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Post-litigation proceedings, the argument goes, were necessary to secure the relief sought in the civil action, because the district court could neither declare that Kim was entitled to permanent resident status nor stay the deportation proceedings.

In *Hudson,* the Supreme Court did construe the civil action EAJA provision to permit a fee award for administrative proceedings carried out on remand after the plaintiff had prevailed in court. The Court, however, emphasized the uncommon statutory scheme before it—the judicial review provisions of the Social Security Act ("SSA"), 42 U.S.C. § 405(g)—and distinguished that statute from the standard provisions for judicial review of agency action. 109 S.Ct. at 2254. The Court noted that

> [t]he detailed provisions for the transfer of proceedings to the Secretary and for the filing of the Secretary's subsequent findings with the court suggest a degree of direct interaction between a federal court and an administrative agency alien to traditional review of agency action under the Administrative Procedure Act.

*Id.* The Court stressed, moreover, that the plaintiff would not have been a "prevailing party" until the proceedings on remand were completed, nor would the district court's order remanding the case to the Secretary (and retaining jurisdiction) have constituted a final determination of the civil action. *Id.* at 2254–55. The administrative proceedings on remand, the Court concluded, were therefore so "intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees" that they "should be considered part and parcel of the action for which fees may be awarded." *Id.* at 2255. Proceedings under the INA lack the specific features of the SSA proceedings that, in *Hudson,* demonstrated the "intimate tie" between administrative and judicial proceedings—the visa revocation and deportation proceedings sparked the civil action but

they were not in any generally accepted sense *part of* the case filed in court.

The government contends *Hudson* is limited by its own terms to statutes regulating in great detail the interaction between the court and the agency, specifically those statutes which provide for continuing court jurisdiction over post-remand agency proceedings. It argues that we should not follow the recent decision by the Eleventh Circuit which read *Hudson* far more expansively, *see Pollgreen v. Morris*, 911 F.2d 527 (11th Cir.1990). We agree.[3]

The district court in the instant case did not retain continuing jurisdiction and never remanded the case to INS although the agency implemented the court's legal conclusions concerning Kim's eligibility to remain in the United States. The court had merely ruled on Kim's qualification for third and sixth preference visas, and had ordered INS to abide by the court's determinations "in any matter relating to the adjustment of Ms. Kim's status," Merits Op. A great many appeals from administrative actions end with a fairly clear judicial resolution of the parties' respective rights. Standing alone, this characteristic does not suffice to meet *Hudson's* (or even *Pollgreen's*) tests. Numerous kinds of administrative proceedings are "necessary to the completion of a civil action," Diss. Op. at 634 (*quoting Hudson*, 109 S.Ct. at 2258), but the Supreme Court did not indicate that all other requirements fall by the wayside once this notion of "necessity" is established. Such a reading would contradict rejection of fees for administrative proceedings preceding the judicial ones—a rejection with which our dissenting colleague agrees. We believe that *Hudson* sets out specific and well-defined prerequisites for a civil action: there must be a remand by the reviewing court and "detailed provisions for the transfer of proceedings from the courts to the [agency]," which would implicate "a degree of direct interaction between a federal court and an administrative

agency alien to traditional review of agency action under the [APA]," 109 S.Ct. at 2254, before the award of fees can be even considered.

The dissent's claim that *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), and *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), allow fees even without remand and retention of jurisdiction by the district court is, in our view, misplaced, Diss. Op. at 633. *Delaware Valley* involved interpretation of the phrase "any final order in *any action* brought pursuant to" certain provisions of the Clean Air Act, *see* 42 U.S.C. § 7604(d) (emphasis added). And *New York Gaslight* applied the fee-shifting provisions of Title VII, 42 U.S.C. § 2000e–5(k), which provided for attorney's fees "[i]n *any action or proceeding* under this title" (emphasis added). EAJA, on the other hand, provides fees for a *"civil* action," a more limited term. Both statutes, then, authorized attorney's fees when coordinated administrative/civil schemes, without parallel in the present case, are invoked. As the *Hudson* Court noted, the dispositions in both those cases hinged on the specific wording and *structure* of the statutes construed, *see* 109 S.Ct. at 2256 ("[*New York Gaslight* Court was] looking to the entire structure of Title VII").

The theory that fees are available if the district court retains "a functional equivalent" of continuing jurisdiction by abandoning the explicit requirements of *Hudson* would permit an erosion of the statutory limits with no discernible boundary in sight.[4] This potentially enormous expansion of the government's fee liability is inconsistent with the Supreme Court description of the circumstances in which fees would be available as "unusual," *Hudson*, 109 S.Ct. at 2254, and with its statement that fees may be awarded only where the post-remand proceedings are "so intimately

---

3. In any case, *Pollgreen* concerned the agency action on remand from a district court—thus satisfying one of *Hudson's* requirements. There is no remand in this case.

4. The dissent's reliance on the importance of the administrative proceeding to the success of the claim sweeps away this boundary completely, leaving us with unguided discretion. This is hardly *Hudson's* teaching.

tied with judicial proceedings as to be considered part of the 'civil action,'" 109 S.Ct. at 2257. None of the standards set out in *Hudson* is met here and we decline to stretch the Supreme Court's opinion and read the statutory language expansively merely on the basis of the assorted policy considerations urged by Full Gospel. *See* Diss. Op. at 634–635.

RUTH BADER GINSBURG, Circuit Judge, concurring in principal part, but dissenting as to fees for INS processing following the district court's decision.

I agree with my colleagues that judicial review EAJA, 28 U.S.C. § 2412(d)(3), does not entitle Full Gospel to fees for the pre-litigation visa proceedings or the deportation hearing. *See* Per Curiam Opinion at 630–631. I agree also that civil action EAJA, 28 U.S.C. § 2412(d)(1)(A), does not accommodate a fee award for proceedings at the administrative level prior to the commencement of suit for judicial relief. I dissent, however, from the court's denial of fees for the post-litigation proceedings before INS. *Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), is the path-marking decision. That decision, I conclude, supports a fee award, under civil action EAJA, for the thirteen hours counsel devoted, after the litigation, to fulfillment of the court's judgment.

In *Hudson,* the Supreme Court held that civil action EAJA permits a federal court to award a prevailing Social Security Act claimant fees, not only for representation in court, but also for representation at the administrative level following a court-ordered remand. It is true, as my colleagues point out, that in *Hudson,* the Court emphasized the "uncommon" scheme of the Social Security Act. It is also true that here, unlike *Hudson,* the district court did not formally remand the case or retain jurisdiction while INS implemented the court's declarations concerning Kim's visa status.

*Hudson,* however, invoked a more general principle; the Court's decision, which linked the post-remand administrative proceedings to the "civil action," did not simply detail and rely on the "somewhat un-

usual" judicial review prescriptions of the Social Security Act. *See Hudson,* 109 U.S. at 885, 109 S.Ct. at 2254. Rather, the Court wrote:

> Our *past decisions* interpreting other fee-shifting provisions make clear that where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered·part and parcel of the action for which fees are sought.

*Hudson,* 490 S.Ct. at 888, 109 S.Ct. at 2255 (emphasis added).

My colleagues, nonetheless, regard as controlling, *i.e.,* essential to *Hudson's* holding, the remand-retention of jurisdiction pattern present in *Hudson. See* Per Curiam Opinion at 632. The "past decisions" featured by the *Hudson* Court, however, most prominently *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), and *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), did not involve an administrative proceeding on remand in a case over which the district court retained jurisdiction. Yet the Supreme Court described the principles advanced in those decisions as "controlling." *See Hudson,* 490 U.S. at 889, 109 S.Ct. at 2256 ("[T]he principles we found persuasive in *Delaware Valley* and *Carey* are controlling here."). I therefore read *Hudson* as applying a general principle in a particular instance; in the Court's words, civil action EAJA encompasses administrative proceedings that are "intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees." *Accord Pollgreen v. Morris,* 911 F.2d 527, 536 n. 10 (11th Cir.1990) ("The test espoused by the Supreme Court is not how similar the statute governing a particular administrative proceeding is to the Social Security Act, but rather, whether the administrative proceedings are 'intimately tied to the resolution of the judicial action.'").

In determining whether a given administrative proceeding should count as part of the "civil action" for fees purposes, the *Hudson* Court indicated, the pivotal ques-

tion is whether "the administrative proceedings on remand ... were 'crucial to the vindication of [the private party's] rights.' " *Hudson*, 490 U.S. at 889, 109 S.Ct. at 2256 (quoting *Delaware Valley Citizens' Council*, 478 U.S. at 561, 106 S.Ct. at 3096). The Court further observed:

> Where a court finds that the [agency's] position on judicial review was not substantially justified within the meaning of the EAJA, ... it is within the court's discretion to conclude that representation on remand was necessary to the effectuation of its mandate and to the ultimate vindication of the [complainant's] rights....

*Hudson*, 490 U.S. at 890, 109 S.Ct. at 2257. In addition, the Court commented:

> That Congress carved the world of EAJA proceedings into "adversary [administrative] adjudications" and "civil actions" does not necessarily speak to, let alone preclude, a reading of the term "civil action" which includes administrative proceedings necessary to the completion of a civil action.

*Id.* at 892, 109 S.Ct. at 2258.

In the present case, while the district court did not formally remand or retain jurisdiction, that court did rule definitively on Kim's qualification for third and sixth preference visas, and it ordered INS to abide by the court's determinations "in any matter relating to the adjustment of Ms. Kim's status." Merits Op. (Order). The follow-up processing at INS thus complemented the district court's judgment, served to effectuate the court's mandate, and ultimately vindicated the rights of the party who prevailed in court. *See Hudson*, 490 U.S. at 890, 109 S.Ct. at 2257. The thirteen hours in question involved constant calls, correspondence; and office visits by Full Gospel's attorney; as the district court indicated, those hours were diligently and reasonably spent in view of INS's persistence in what the district court called "inexcusable bureaucratic inattention" and "disregard of plain facts." *See* Fees Op. Counsel's post-litigation efforts to propel final action by INS, it seems to

me, were thus "intimately tied to the resolution of the judicial action" within the tenor of the Supreme Court's decision in *Hudson*.

My colleagues suggest that post-litigation fee liability, like fee liability for pre-litigation administrative proceedings, would be irreconcilable with EAJA's scheme. *See* Per Curiam Opinion at 632. I agree that if administrative proceedings were considered part of a "civil action" simply because judicial review occurred at one point, then civil action EAJA would totally displace judicial review EAJA: on no occasion would an EAJA claimant who prevailed on judicial review need to invoke judicial review EAJA, with its "adversary adjudication" limitation. If civil action EAJA thus blanketed the territory, Congress' provision for judicial review EAJA would be rendered superfluous. But court-awarded fees for post-litigation proceedings, because of their confined scope and linkage to the court's judgment, do not similarly undermine EAJA's structure. Far from encompassing all administrative proceedings judicially reviewed, court awards would cover precisely and only time reasonably spent by an attorney to prevail in court and, thereafter, to achieve agency action consistent with the court's decree. Judicial review EAJA, as this case illustrates, would remain vital: the panel is unanimous in holding that the "adversary adjudication" limitation attending judicial review EAJA rules out fees for the pre-litigation visa proceedings (93 hours) and the deportation hearing (13 hours).

Finally, I cannot agree with my colleagues that the availability of fees for administrative proceedings in the wake of a court's judgment would occasion "enormous expansion of the government's fee liability." *See* Per Curiam Opinion at 632. As Full Gospel maintained in the supplemental briefing we requested,* if an agency's subordinate officers are instructed to carry out a court's order promptly, the EAJA claimant's attorney will need to spend little time on post-decision proceedings and should not accrue substantial fees. *See* Appellees' Supplemental Memorandum at 6. If, however, an agency faces

---

* By order filed December 5, 1990, we directed the parties to brief, discretely, this question:

Does 28 U.S.C. § 2412(d)(1)(A) provide for an award of fees for time spent on administrative

no fee liability, then the impetus on the agency's side to proceed expeditiously will be diminished, and the incentive for the claimant's counsel to devote time to the matter may be reduced. *See id.* at 7; *cf. Hudson,* 490 U.S. at 890, 109 S.Ct. at 2256 (absent fees for follow-up administrative proceedings, there would be an "incentive … for attorneys to abandon claimants after judicial remand"). Post-litigation fee liability, as the Supreme Court stated in *Hudson,* would thus be "ancillary" to the civil action for judicial review, *id.* at 892, 109 S.Ct. at 2258, and would further the statutory "purpose 'to diminish the deterrent effect of seeking review of, or defending against, government action.'" *Id.* at 890, 109 S.Ct. at 2257 (quoting 94 Stat. 2325).

In sum, guided by *Hudson,* I would read the term "civil action" in 28 U.S.C. § 2412(d)(1)(A) to include administrative proceedings prompted by, and in aid of expeditious agency recognition and enforcement of, a court's judgment. On that ground, I would affirm the district court's award of $1263.60 for "after litigation" administrative proceedings.

proceedings subsequent to the district court's decision on the merits? We further stated that the briefs should take account, particularly, of *Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), and *Pollgreen v. Morris,* 911 F.2d 527 (11th Cir. 1990).